**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE NON-PARTY SUBPOENAS | Case: 1:22–mc–00060<br>Assigned To : Nichols, Carl J.<br>Assign. Date : 6/13/2022<br>Description: Misc.<br><br>Case No. _____ |
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 21-670 (CJN) |
| STEPHEN K. BANNON, | |
| *Defendant.* | |

## MOTION TO QUASH

Pursuant to Rule 47 and Rule 17 of the Federal Rules of Criminal Procedure and Rule 47 of the Local Criminal Rules, the Honorable Nancy Pelosi, the Honorable Bennie G. Thompson, the Honorable Elizabeth L. Cheney, the Honorable Adam B. Schiff, the Honorable James B. Raskin, the Honorable Susan E. Lofgren, the Honorable Elaine G. Luria, the Honorable Peter R. Aguilar, the Honorable Stephanie Murphy, the Honorable Adam D. Kinzinger, the Honorable Jim Clyburn, the Honorable Steny Hoyer, David Buckley, Douglas Letter, Kristen Amerling, and Sean Tonolli respectfully move to quash the subpoenas issued to them by Defendant Stephen K. Bannon. *See* Exs. A-P.  For the reasons set forth in the accompanying Memorandum of Points and Authorities, the subpoenas should be quashed.

A proposed order is attached.

Respectfully submitted,

DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*
MICHELLE S. KALLEN
  *Special Litigation Counsel*
STACIE M. FAHSEL
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

June 13, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN RE NON-PARTY SUBPOENAS | ) ) ) ) ) | Case No. _____ |
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 21-670 (CJN) |
| STEPHEN K. BANNON, | ) ) | |
| *Defendant.* | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIEES**
**IN SUPPORT OF MOTION TO QUASH**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

GOVERNING LEGAL STANDARDS ............................................................................... 3

ARGUMENT ...................................................................................................................... 5

I.   The Speech or Debate Clause Requires That All the Subpoenas Be Quashed ................. 6

    A.   The Subpoenas Implicate the Speech or Debate Clause ......................................... 6

    B.   The Speech or Debate Clause Applies to All of the Testimony and Most of
        the Documents Sought by Bannon ....................................................................... 11

II.   The Subpoenas Do Not Comply with Rule 17 .................................................................. 15

    A.   Bannon Failed to Obtain Court Approval ............................................................. 15

    B.   The Subpoenas Seek Testimony and Documents That Are Irrelevant, and
        the Subpoenas Lack the Requisite Specificity ..................................................... 16

III.  Bannon Cannot Show "Extraordinary Circumstances" That Would Require the
     Testimony of High-Ranking Government Officials ........................................................ 23

IV.   The Subpoena to the House General Counsel Improperly Seeks Privileged
     Information ...................................................................................................................... 27

CONCLUSION .................................................................................................................. 29

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bardoff v. United States*,
    628 A.2d 86 (D.C. 1993) ........................................................................................24, 25, 26

*Barenblatt v. United States*,
    360 U.S. 109 (1959).............................................................................................................8

*Benford v. Am. Broad. Cos.*,
    102 F.R.D. 208 (D. Md. 1984)..........................................................................................13

*Blankenship v. Fox News Network, LLC*,
    No. 19-CV-00236, 2020 WL 7234270 (S.D. W.Va. Dec. 8, 2020)................................25, 27

*Bogan v. Bos.*,
    489 F.3d 417 (1st Cir. 2007).......................................................................................23, 24, 26

*Bowman Dairy Co. v. United States*,
    341 U.S. 214, 220 (1951)...............................................................................................4, 21

*Brennan v. Phila.*,
    388 F. Supp. 3d 516 (E.D. Pa. 2019) ...............................................................................27

*Brown & Williamson Tobacco Corp. v. Williams*,
    542 F.3d 909 (D.C. Cir. 2008) ..............................................................................8, 11, 13, 14

*Cano v. Davis*,
    No. 01-CV-08477 (C.D. Cal. Mar. 28, 2002) ...................................................................25

*Dennis v. Sparks*,
    449 U.S. 24 (1980)...........................................................................................................11

*Doe v. McMillan*,
    412 U.S. 306 (1973).........................................................................................7, 8, 10, 12

*Dombrowski v. Burbank*,
    358 F.2d 821 (D.C. Cir. 1966) .........................................................................................11

*\*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975).....................................................6, 7, 8, 9, 10, 11, 12, 14, 15

*Equal Emp. Opportunity Comm'n v. Lutheran Soc. Servs.*,
    186 F.3d 959 (D.C. Cir. 1999) .........................................................................................28

*Feldman v. Bd. of Educ. Sch. Dist. #1 City & Cnty. of Denver*,
    No. 09-CV-01049, 2010 WL 383154 (D. Colo. Jan. 28, 2010)........................................25

ii

*Franklin Sav. Ass'n v. Ryan*,
   922 F.2d 209 (4th Cir. 1991) ...........................................................................23

*F.T.C. v. Atl. Richfield Co.*,
   567 F.2d 96 (D.C. Cir. 1977) ..........................................................................16

*\*Gravel v. United States*,
   408 U.S. 606 (1972).................................................................6, 7, 9, 10, 11, 15

*Hankins v. Phila.*,
   No. 95-CV-1449, 1996 WL 524334 (E.D. Pa. Sept. 12, 1996) ......................27

*Helstoski v. Meanor*,
   442 U.S. 500 (1979)..........................................................................................7

*Hickman v. Taylor*,
   329 U.S. 495 (1947) .......................................................................................28

*In re F.D.I.C.*,
   58 F.3d 1055 (5th Cir. 1995) .....................................................................23, 27

*In re Grand Jury Subpoenas*,
   571 F.3d 1200 (D.C. Cir. 2009) .....................................................................11

*In re Lindsey*,
   158 F.3d 1263 (D.C. Cir. 1998) .....................................................................28

*In re Martin Marietta Corp.*,
   856 F.2d 619 (4th Cir. 1988) .........................................................................21

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) .......................................................................18

*In re United States ("Bernanke")*,
   542 F. App'x 944 (Fed. Cir. 2013) .............................................................23, 24

*In re United States ("Kessler")*,
   985 F.2d 510 (11th Cir. 1993) ...............................................................23, 24, 27

*In re United States ("Reno & Holder")*,
   197 F.3d 310 (8th Cir. 1999) .................................................................23, 24, 27

*Jewish War Veterans of the U.S., Inc. v. Gates*,
   506 F. Supp. 2d 30 (D.D.C. 2007)...............................................................11, 13

*Jud. Watch, Inc. v. U.S. Dep't of Justice*,
   800 F. Supp. 2d 202 (D.D.C. 2011)................................................................29

*Kilbourn v. Thompson*,
   103 U.S. 168 (1880).................................................................................7

*Kyle Eng'g Co. v. Kleppe*,
   600 F.2d 226 (9th Cir. 1979) ..................................................................23

*\*Lederman v. N.Y.C. Dep't of Parks & Recreation*,
   731 F.3d 199 (2d Cir. 2013)..................................................5, 23, 24, 26

*McCarthy v. Pelosi*,
   5 F.4th 34 (D.C. Cir. 2021) ....................................................................9

*McGrain v. Daugherty*,
   273 U.S. 135 (1927)............................................................................8, 9

*McNamee v. Mass.*,
   No. 12-40050, 2012 WL 1665873 (D. Mass. May 10, 2012).................25

*McSurely v. McClellan*,
   553 F.2d 1277 (D.C. Cir. 1976) ..........................................................8, 15

*Miller v. Transam. Press, Inc.*,
   709 F.2d 524 (9th Cir. 1983) ..............................................................8, 11

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
   844 F.2d 856 (D.C. Cir. 1988)............................................................11, 14

*Moriah v. Bank of China Ltd.*,
   72 F. Supp. 3d 437 (S.D.N.Y. 2014)....................................................24, 25

*Rangel v. Boehner*,
   785 F.3d 19 (D.C. Cir. 2015) ........................................................9, 10, 15

*Simplex Time Recorder Co. v. Sec'y of Labor*,
   766 F.2d 575 (D.C. Cir. 1985) ..............................................................5, 23

*Springfield Terminal Ry. Co. v. United Transp. Union*,
   No. 89-0073, 1989 WL 225031 (D.D.C. May 18, 1989).......................25

*Stern v. D. Mass.*,
   214 F.3d 4 (1st Cir. 2000)....................................................................4, 17

*Tavoulareas v. Piro*,
   527 F. Supp. 676 (D.D.C. 1981) ............................................................8

*Tenney v. Brandhove*,
   341 U.S. 367 (1951)................................................................................10

iv

*United States v. Beasley*,
 479 F.2d 1124 (5th Cir. 1973) ....................................................................5

*\*United States v. Bebris*,
 4 F.4th 551 (7th Cir.) ...........................................................................4, 5, 17, 19

*United States v. Biaggi*,
 853 F.2d 89 (2d Cir. 1988)....................................................................14

*United States v. Bibby*,
 752 F.2d 1116 (6th Cir. 1985) ................................................................23

*\*United States v. Binh Tang Vo*,
 78 F. Supp. 3d 171 (D.D.C. 2015) ................................................2, 4, 15, 16

*United States v. Brewster*,
 408 U.S. 501 (1972).............................................................................10, 15

*United States v. Brooks*,
 966 F.2d 1500 (D.C. Cir. 1992) ..............................................................21

*United States v. Dean*,
 55 F.3d 640 (D.C. Cir. 1995) ..................................................................11

*United States v. Doe*,
 455 F.2d 753 (1st Cir. 1972) ...................................................................15

*United States v. Dowdy*,
 440 F. Supp. 894 (W.D. Va. 1977) ..........................................................24
 479 F.2d 213 (4th Cir. 1973) .............................................................13, 14

*United States v. Edwards*,
 191 F. Supp. 2d 88 (D.D.C. 2002) ............................................................4

*United States v. Ferguson*,
 37 F.R.D. 6 (D.D.C 1965)........................................................................16

*United States v. Finn*,
 919 F. Supp. 1305 (D. Minn. 1995)..........................................................16

*United States v. Gaudin*,
 515 U.S. 506 (1995)................................................................................20

*United States v. Hardy*,
 224 F.3d 752 (8th Cir. 2000) ...................................................................23

*\*United States v. Helstoski*,
 442 U.S. 477 (1979)..........................................................................6, 10, 15

*United States v. Hoeffner*,
254 F.R.D. 302 (S.D. Tex. 2008) ......................................................28

*United States v. Jefferson*,
546 F.3d 300 (4th Cir. 2008) ...........................................................15

*United States v. Johnson*,
383 U.S. 169 (1966) ...............................................................6, 7, 10

*United States v. Koubriti*,
305 F. Supp. 2d 723 (E.D. Mich. 2003) .............................................24

*United States v. Kumar*,
No. 17-CR-5-FL-1, 2019 WL 1486365 (E.D.N.C. Apr. 3, 2019) ...........19

**United States v. Libby*,
432 F. Supp. 2d 26 (D.D.C. 2006) ....................................4, 17, 19, 23

*United States v. Louis*,
No. 04-203, 2005 WL 180885 (S.D.N.Y. Jan. 27, 2005) ......................22

*United States v. Mays*,
246 F.3d 677, 2000 WL 1860727 (9th Cir. Dec. 18, 2000) ..................22

*United States v. McDade*,
28 F.3d 283 (3d Cir. 1994) .............................................................15

**United States v. Morgan*,
313 U.S. 409 (1941) .......................................................................23

*United States v. Myers*,
635 F.2d 932 (2d Cir. 1980) .............................................................7

**United States v. Nixon*,
418 U.S. 683 (1974) ....................................................2, 4, 17, 21, 22

*United States v. Noriega*,
764 F. Supp. 1480 (S.D. Fla. 1991) ..................................................16

**United States v. North*,
713 F. Supp. 1448 (D.D.C. 1989) ................................................5, 19
708 F. Supp. 402 (D.D.C. 1989) .......................................................24

*United States v. Peoples Temple of the Disciples of Christ*,
515 F. Supp. 246 (D.D.C. 1981) ......................................................14

*United States v. Rayburn House Off. Bldg. Room No. 2113*,
497 F.3d 654 (D.C. Cir. 2007) .........................................................10

*United States v. Reyes*,
    239 F.R.D. 591 (N.D. Cal. 2006) .......................................................28

*United States v. Rostenkowski*,
    59 F.3d 1291 (D.C. Cir. 1995) ...........................................1, 15, 25

*United Transp. Union v. Springfield Terminal Ry. Co.*,
    Nos. 87-03442 P & 88-0117 P, 1989 WL 38131 (D. Me. Mar. 13, 1989) ............................13

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ........................................................................28

*Warren Bank v. Camp*,
    396 F.2d 52 (6th Cir. 1968) ...........................................................23

*Watkins v. United States*,
    354 U.S. 178 (1957) ......................................................................8, 9

*Webster v. Sun Co., Inc.*,
    561 F.Supp 1184 (D.D.C. 1983) ....................................................13

**Constitution**

U.S. Const., Art. I, § 6, cl. 1 ...............................................................2, 5

**Statutes and Rules**

2 U.S.C. § 192 ................................................................................9, 17, 18

Fed. R. Crim. P. 17 ..............................................................................2, 4

**Legislative Authorities**

H. Rep. No. 117-152 (2021) ...........................................................3, 18

H. Res. 503, 117th Cong. (2021) .........................................................18

H. Res. 730, 117th Cong. (2021) ...........................................................3

Rules of the U.S. House of Representatives, 117th Cong. (2021)

    Rule I .........................................................................................18

    Rule II ........................................................................................26

**Other**

2 Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Crim. (4th ed. 2022) ......................16

## INTRODUCTION

"[S]ervice in the United States Congress is not a job like any other, it is a constitutional role to be played upon a constitutional stage." *United States v. Rostenkowski*, 59 F.3d 1291, 1312 (D.C. Cir.), *op. suppl. on denial of reh'g*, 68 F.3d 489 (D.C. Cir. 1995). For this reason, a criminal trial subpoena to a Member of Congress, the General Counsel of the House, or Congressional staff seeking documents and testimony is no trivial matter.

Defendant Stephen Bannon subpoenaed twelve Members of Congress, the General Counsel of the House of Representatives, and three senior staff members from the Select Committee to Investigate the January 6th Attack on the United States Capitol (Select Committee) seeking broad categories of documents and trial testimony. The subpoenas to the Members went to the Speaker of the House, the Majority Leader, the Majority Whip, and all of the Members of the Select Committee.

Each subpoena seeks at least twenty broad categories of documents, some of which mention Bannon and some of which sweep far beyond him. For example, Requests 1, 3, 9, and 10 seek "[a]ll documents . . . regarding the establishment of the January 6th Select Committee"; "[a]ll documents . . . regarding the issuance of a subpoena to Mr. Bannon"; "[a]ny private or public statement(s) by you and/or in your possession regarding Mr. Bannon's interaction with the Select Committee"; "[a]ll documents . . . regarding the factors to be considered in determining whether to bring a civil or criminal action or other sanction for an alleged failure to comply with a Congressional subpoena, involving Mr. Bannon or any other individual." Exs. A-P. And Request 15 seeks "All documents in your possession which tend to show a conflict of interest involving any Select Committee member or staff (including but not limited to documents that pertain to payments for a book that was written by and/or promoted by any Select Committee member or staff from January 6, 2021, up until the present date)." *Id.*

1

All twelve subpoenaed Members, the House General Counsel, and the three Select Committee staff members (Non-Party Movants) move to quash these improper subpoenas for three independent reasons.

*First*, as governing precedent from the Supreme Court and the D.C. Circuit clearly establishes, all of the subpoena recipients are entitled to absolute immunity under the Constitution's Speech or Debate Clause.  *See* U.S. Const., Art. I, § 6, cl. 1.

*Second*, the subpoenas are improper under Federal Rule of Criminal Procedure 17.  Not only did Bannon improperly bypass court approval for these requests—*see United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 178 (D.D.C. 2015) ("Rule 17 provides a limited grant of authority, mentioning pretrial production only in connection with court approval.")—but these requests are precisely the sort of broad "fishing expeditions" (akin to civil discovery) prohibited by *United States v. Nixon*, 418 U.S. 683, 700 (1974).  And, to the extent Bannon seeks testimony about the Select Committee's subpoena to him or the Select Committee's interactions with him or his counsel, testimony from any Member of Congress is unnecessary and unduly burdensome because that information is available from Select Committee staff.

*Third*, the subpoena recipients are protected by the "high-ranking government official" doctrine.

In addition, as to the House General Counsel, the subpoena demands privileged information between the General Counsel and his client.

To the extent testimony about Bannon's subpoena from the Select Committee or his interactions with the Select Committee are material to his defense at trial, two Select Committee staff members—Chief Counsel and Deputy Staff Director Kristin Amerling and Senior Investigative Counsel Sean Tonolli—will voluntarily be made available by the Select Committee

2

despite their Speech or Debate immunity to testify as to the narrow topics that are relevant to the elements of the charged crime and available defenses.  These two witnesses will also likely be providing testimony at trial as witnesses for the prosecution.

**BACKGROUND**

The House of Representatives has already provided extensive background on the January 6th attack on the United States Capitol, Bannon's role in the lead-up to that attack, and the Select Committee's unsuccessful effort to obtain his cooperation with the Select Committee's investigation.  *See* H. Rep. No. 117-152, at 6-7 (2021); H. Res. 730, 117th Cong. (2021).

On June 2, Bannon served sixteen subpoenas seeking documents and trial testimony from House Members and senior Committee staff.  The subpoenas demand numerous broad categories of documents, some specific to Bannon and some that make no mention of him.  *See* Exs. A-P.  These subpoenas demand that the recipients "provide the documents in electronic format . . . at any time prior to **July 14, 2022**" or alternatively "bring the documents . . . to the Pretrial Conference scheduled in this matter for **July 14, 2022, at 9:00 A.M.**"  *Id.*

Upon receiving the subpoenas, House General Counsel reached out to Bannon's counsel to confer about potentially narrowing the areas in dispute.  Counsel met, but were unable to agree on any withdrawal or narrowing of the subpoenas.

**GOVERNING LEGAL STANDARDS**

"Rule 17 first creates a general rule: Subpoenas are issued without the court's involvement when they command the recipient's presence and possibly the production of documents at a particular hearing."  *Binh Tang Vo*, 78 F. Supp. 3d at 178.  "Rule 17(c) creates a limited exception to this rule, declaring that '[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.'"  *Id.* (quoting Fed. R. Crim. P. 17(c)).  Rule 17(c) permits a criminal defendant to subpoena "books, papers,

3

documents, data, or other objects . . . designate[d]" for use at trial so long as compliance with the

subpoena would not be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(1)-(2).

"Rule 17 provides a limited grant of authority," for document production "mentioning

pretrial production only in connection with court approval." *Binh Tang Vo*, 78 F. Supp. 3d at

178. "While a Rule 17(c) subpoena duces tecum is a legitimate device to obtain evidentiary

material, it was never intended to be a broad discovery device going beyond that which is

required either by Rule 16 of the Federal Rules of Criminal Procedure or by *Brady*." *United*

*States v. Edwards*, 191 F. Supp. 2d 88, 89 (D.D.C. 2002); *see also Bowman Dairy Co. v. United*

*States*, 341 U.S. 214, 220 (1951) ("Rule 17(c) was not intended to provide an additional means

of discovery.").

"[T]o compel production of documents under Rule 17(c), the party seeking production

'must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity.'" *United States v.*

*Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting *Nixon*, 418 U.S. at 700). If a subpoena

does not satisfy these three requirements, it "will be deemed unreasonable or oppressive and

must be either quashed or modified." *Id.*

As to a subpoena's demand for trial testimony, the subpoenaing party—here, Bannon—

must establish that the testimony and documents sought are "relevant and material." *Stern v. D.*

*Mass.*, 214 F.3d 4, 17 (1st Cir. 2000); *see also, e.g.*, *United States v. Bebris*, 4 F.4th 551, 559-60

(7th Cir.), *cert. denied*, 142 S. Ct. 489 (2021). In other words, Bannon must "demonstrate with

requisite specificity in concrete terms" that the subpoenaed individual could supply information

"that would be material and essential to the defense"—*i.e.*, "that [the individual's] appearance is

necessary to assure defendant a fair trial." *United States v. North*, 713 F. Supp. 1448, 1449

(D.D.C. 1989). "Where the sought testimony is cumulative or immaterial, a court does not abuse

its discretion by quashing a Rule 17(a) subpoena." *Bebris*, 4 F.4th at 559-60 (citing *United States v. Beasley*, 479 F.2d 1124, 1128 (5th Cir. 1973)).

If the subpoena is directed to high-ranking government officials, the party seeking the trial testimony must establish "extraordinary" or "exceptional" circumstances and show that the information cannot be obtained elsewhere. *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) ("high-ranking government official[s] should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official action").

In this case, the Constitution by its clear terms also imposes on Bannon a substantial limitation: The Speech or Debate Clause states that "[t]he Senators and Representatives . . . shall . . . be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place." U.S. Const., Art. I, § 6, cl. 1.

## **ARGUMENT**

As noted at the outset of this brief, Bannon's subpoenas cannot be enforced for multiple reasons. *First*, the compelled testimony and production of documents he seeks are barred by the Speech or Debate Clause. *Second*, these subpoenas fall far short of Rule 17's specificity and reasonableness requirements; the subpoenas are too broad, and they seek testimony and documents irrelevant to the issues at trial. *Third*, to the extent Bannon can identify any testimony relevant to live issues at trial, he has not established the exceptional circumstances necessary to obtain testimony from high-ranking government officials that he could not obtain elsewhere. *Finally*, the subpoena to the House General Counsel improperly seeks privileged information.

To the extent testimony about the Select Committee's subpoena to Bannon or his interactions with the Select Committee is necessary for the prosecution or defense of this case, the Select Committee will make available two of its staff so that they can address those limited issues that are relevant to the crimes charged.

## I.      The Speech or Debate Clause Requires That All the Subpoenas Be Quashed

### A.      The Subpoenas Implicate the Speech or Debate Clause

Simply put, Bannon is attempting to misuse the powers of this Court in order to cause an obvious violation of the Speech or Debate Clause.  His effort disregards extensive precedent from the Supreme Court and the D.C. Circuit applying this Clause in a manner that vindicates its critical role in our system of democratic government.

"The purpose of the [Speech or Debate] Clause is to insure that the legislative function the Constitution allocates to Congress may be performed *independently*. . . .  [T]he 'central role' of the Clause is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary.'"  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (emphasis added) (quoting *Gravel v. United States*, 408 U.S. 606, 617 (1972)); *see also United States v. Helstoski*, 442 U.S. 477, 491 (1979) ("This Court has reiterated the central importance of the Clause for preventing intrusion by [the] Executive and Judiciary into the legislative sphere.").  The Clause "serves the additional function of reinforcing the separation of powers so deliberately established by the Founders."  *United States v. Johnson*, 383 U.S. 169, 178 (1966); *see also Helstoski*, 442 U.S. at 491 ("[The] purpose [of the Clause] was to preserve the constitutional structure of separate, coequal, and independent branches of government."); *United States v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980) ("Like the Speech or Debate Clause, the doctrine of separation of powers serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of the

Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen.").

Because "the guarantees of th[e] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).  Accordingly, the Supreme Court has repeatedly, and "[w]ithout exception, . . . read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501.[1]  The Clause applies to all activities "within the 'legislative sphere,'" *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (quoting *Gravel*, 408 U.S. at 624-25), which includes all actions considered to be

> an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625; *accord Eastland*, 421 U.S. at 504.

Courts have broadly construed the concept of "legislative activity" and have "not taken a literalistic approach in applying the privilege . . . .  Committee reports, resolutions, and the act of voting are equally covered." *Gravel*, 408 U.S. at 617.  Of particular relevance here, Congressional committee investigations and Congressional hearings are activities within the legislative sphere, as is the collecting of information in furtherance of legislative responsibilities because "'[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)); *McMillan*, 412 U.S. at

---

[1]  *Accord Doe v. McMillan*, 412 U.S. 306, 311 (1973); *Gravel*, 408 U.S. at 617-18; *Johnson*, 383 U.S. at 179; *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880); *Myers*, 635 F.2d at 937.

313.  Protected information-gathering encompasses both formal Congressional committee processes and less formal inquiries by committees and individual Members.  *See Eastland*, 421 U.S. at 504; *see also Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 411-12, 423 (D.C. Cir. 1995) (documents voluntarily delivered to committee by private citizen protected).[2]

These instructions from the Supreme Court and D.C. Circuit are instrumental to the constitutional and common-sense principle that Congress's authority to investigate and obtain information is a fundamental feature of its Article I legislative function.  *See, e.g.*, *Eastland*, 421 U.S. at 504 n.15 ("[T]he scope of [Congress's] power of inquiry . . . is as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution." (quotation marks omitted; ellipsis in original)).  "That power is broad.  It encompasses inquiries concerning the administration of existing laws as well as proposed or possibly needed statutes."  *Watkins v. United States*, 354 U.S. 178, 187 (1957).[3]  Indeed, the Supreme Court has emphasized that:

> It is unquestionably the duty of *all citizens* to cooperate with the Congress in its efforts to obtain the facts needed for intelligent legislative action.  It is their unremitting obligation . . . to respect the dignity of the Congress and its committees

---

[2]  *Accord Miller v. Transam. Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one of the 'things generally done in a session of the House,' concerning matters within the 'legitimate legislative sphere.'" (citations omitted)); *McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976) (en banc) ("[A]cquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the [Speech or Debate] privilege so that congressmen are able to discharge their constitutional duties properly." (quotation omitted)); *Tavoulareas v. Piro*, 527 F. Supp. 676, 680 (D.D.C. 1981) ("[A]cquisition of information by congressional staff, whether formally or informally, is an activity within the protective ambit of the [S]peech or [D]ebate [C]lause.").

[3] *Accord Barenblatt v. United States*, 360 U.S. 109, 111 (1959) ("The power of inquiry has been employed by Congress throughout our history, over the whole range of the national interests concerning which Congress might legislate or decide upon due investigation not to legislate."); *see also Watkins*, 354 U.S. at 187 ("The power of the Congress to conduct investigations is inherent in the legislative process."); *McGrain*, 273 U.S. at 174 ("[The] power to secure needed information by such means [i.e., compulsory process] has long been treated as an attribute of the power to legislate . . . .  We are of [the] opinion that the power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function.").

and to testify fully with respect to matters within the province of proper investigation.

*Id.* at 187-88 (emphasis added).

Moreover, nothing in 2 U.S.C. § 192, the statute that provides for criminal prosecution when an individual defies a Congressional subpoena (thereby depriving Congress of information relevant to its legislative functions), can possibly be read as eliminating Speech or Debate Clause immunity as a condition for a successful conviction under that statute.

It is also critical to the proper operation of the Speech or Debate Clause that its protections encompass Congressional staff and House Officers. *See, e.g.*, *Eastland*, 421 U.S. at 507 ("no distinction between the Members and Chief Counsel"); *Gravel*, 408 U.S. at 616-18 (in applying Clause, a "Member and his aide are to be treated as one" and "the conduct of the [aide] would be a protected legislative act if performed by the Member himself") (internal quotation marks and citation omitted); *Rangel v. Boehner*, 785 F.3d 19, 24-25 (D.C. Cir. 2015) ("Indeed, the Supreme Court has extended the Speech or Debate Clause to aides from all walks of legislative life, including committee staffers.").

As the D.C. Circuit recently reiterated, "[t]he key consideration, Supreme Court decisions teach, is the act presented for examination, not the actor." *McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021) (internal quotation marks and citation omitted).

Just as important here is that the Speech or Debate Clause bars any "inquiry into . . . the motivation for [legislative] acts." *Helstoski*, 442 U.S. at 489 (quoting *United States v. Brewster*, 408 U.S. 501, 512 (1972)); *see also Johnson*, 383 U.S. at 180, 184-85 (such inquiry "necessarily contravenes the . . . Clause").

Moreover, the D.C. Circuit has flatly rejected the oft-repeated idea that claims that Members of Congress, or Committees, Officers, or staff members acted unlawfully or with an

unworthy purpose override Speech or Debate Clause immunity.  That court has, citing Supreme

Court rulings, explained that "[t]his 'familiar' argument—made in almost every Speech or

Debate Clause case—has been rejected time and again . . . . An act does not lose its legislative

character simply because a plaintiff alleges that it violated the House Rules, . . . or even the

Constitution."  *Rangel*, 785 F.3d at 24 (internal quotation marks omitted).  *See, e.g.*, *McMillan*,

412 U.S. at 312-13 (Clause applies to all legislative activities "even though the[] conduct, if

performed in other than legislative contexts, would in itself be unconstitutional or otherwise

contrary to criminal or civil statutes"); *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951).

 Both the Supreme Court and the D.C. Circuit have stated unequivocally that, when the

Clause applies, its protections are "absolute," a result that governs equally in both the civil and

criminal contexts:

> The question to be resolved is whether the actions of the petitioners fall within the
> "sphere of legislate legislative activity."  If they do, the petitioners "shall not be
> questioned in any other Place" about those activities since the prohibitions of the
> Speech or Debate Clause are absolute.

*Eastland*, 421 U.S. at 501 (footnote omitted; quoting *McMillan*, 412 U.S. at 312-13); *see also,*

*e.g.*, *Gravel*, 408 U.S. at 623 n.14 (the Clause, where applicable, is "absolute"); *Rangel*, 785 F.3d

at 24 ("Such is the nature of absolute immunity, which is—in a word—absolute."); *United States*

*v. Rayburn House Off. Bldg. Room No. 2113*, 497 F.3d 654, 660 (D.C. Cir. 2007) ("The bar on

compelled disclosure is absolute, and there is no reason to believe that the bar does not apply in

the criminal . . . context." (citation omitted)).

 Finally, of great importance here, the Clause provides both a non-disclosure and a

testimonial immunity that protects Members and Congressional staff from being compelled to

testify about actions tied to the legislative process, *see, e.g.*, *Gravel*, 408 U.S. at 615-16,[4] as well as from being compelled to produce legislative records, *see, e.g.*, *Brown & Williamson*, 62 F.3d at 419-21.[5]

The subpoenas issued here by Bannon utilizing this Court's processes violate all of these firmly established and important constitutional principles.

### B.   The Speech or Debate Clause Applies to All of the Testimony and Most of the Documents Sought by Bannon

All of the testimony sought by Bannon from the twelve Members of Congress, the three Select Committee staffers, and the House General Counsel directly relates to the legislative activity that is absolutely protected by the Speech or Debate Clause.[6]  The documents Bannon seeks also concern quintessentially Speech-or-Debate-protected activities and the subpoenas for them must be quashed.[7]

All of the information Bannon seeks to compel concerns the Congressional power of inquiry, specifically: (1) the authority of the Select Committee to conduct an investigation into

---

[4] *See also, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 30 (1980); *Miller*, 709 F.2d at 528-29.

[5] *See also, e.g.*, *In re Grand Jury Subpoenas*, 571 F.3d 1200 (D.C. Cir. 2009); *United States v. Dean*, 55 F.3d 640, 663 n.14 (D.C. Cir. 1995) (noting trial court's quashing of testimonial subpoena on Speech or Debate grounds); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859-61 (D.C. Cir. 1988); *Dombrowski v. Burbank*, 358 F.2d 821, 823-24 (D.C. Cir. 1966), *aff'd in part & rev'd in part on other grounds sub nom. Dombrowski v. Eastland*, 387 U.S. 82 (1967); *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 52-62 (D.D.C. 2007).

[6] As noted above, *see supra* p. 6, staff members Kristin Amerling and Sean Tonolli will nevertheless be made available by the Select Committee to testify at trial regarding certain relevant topics.  Those individuals will separately move for a protective order from this Court to limit the topics on which Bannon's counsel may properly ask questions.  *See infra* p. 18 n.12.

[7] To the extent that a limited number of documents sought by Bannon are not covered by the Speech or Debate Clause and not absolutely privileged (such as communications by Members to the press) the subpoena recipients move to quash those requests on other grounds. *See infra* Sections II-IV.

the actions on and related to the January 6, 2021 attack on the United States Capitol; (2) the involvement of the Select Committee and House Leadership in seeking information from Bannon related to that investigation; and (3) decisions regarding coordination efforts between the Select Committee and House Leadership regarding holding Bannon in contempt of Congress and the filing of an amicus brief in his pending criminal proceeding.

Supreme Court precedent dictates that "the act 'of authorizing an investigation pursuant to which . . . materials were gathered' is an integral part of the legislative process," *Eastland*, 421 U.S. at 505 (quoting *McMillan*, 412 U.S. at 313).  Therefore, all documents and any testimony sought related to the establishment, membership, staffing, authority, and operation of the Select Committee is absolutely protected by the Speech or Debate Clause.

Moreover, as explained above, that Clause protects the information gathered by the Select Committee Members, its staff, and the House General Counsel in furtherance of the Select Committee's investigation.  Here, this includes any information: (1) obtained about or concerning Bannon; (2) regarding claims or assertions of executive privilege by President Biden or former President Trump; (3) related to actual or potential arguments, claims, accommodations, and/or defenses that Bannon or other individuals may have advanced; (4) regarding the investigative methods used or the strategy of either the Select Committee or the full House concerning contempt of Congress proceedings related to Bannon; (5) related to the filing of any civil litigation or amicus briefs in this or any other cases involving the Select Committee's investigation; and (6) with respect to any bias, animosity, or conflicts of interest between or among the Select Committee Members, staff, or other House employees.

Such information is absolutely privileged regardless of by what method—formal or informal—or from what source the material or information was obtained.  *See, e.g.*, *Brown &*

*Williamson*, 62 F.3d at 422-23 (documents delivered to committee by private citizen held

protected); *United States v. Dowdy*, 479 F.2d 213, 221, 224 (4th Cir. 1973) (Member's informal

gathering of information from federal agencies in furtherance of legislative functions held

protected).[8]

The Court's role regarding this motion to quash is thus limited to determining whether

the relevant activities of the subpoena recipients were an integral part of the legislative process:

"The courts should not go beyond the narrow confines of determining that a committee's inquiry

may fairly be deemed within its province." *Eastland*, 421 U.S. at 506 (quotation marks

omitted).[9]

---

[8]  *Accord Jewish War Veterans*, 506 F. Supp. 2d at 54 (privileged "information gathering may take the form of communications with organizations, constituents, or officials of a coordinate branch"); *id.* at 56 ("[T]he informality or passivity of the method through which Congress acquired the information did not lessen or negate the applicability of the Clause's protections."); *Webster v. Sun Co., Inc.*, 561 F. Supp. 1184, 1189-90 (D.C. Cir. 1984) (receipt of memorandum from lobbyist "was still well within the bounds of the speech or debate clause privilege"), *vacated & remanded on other grounds*, 731 F.2d 1 (D.C. Cir. 1984); *United Transp. Union v. Springfield Terminal Ry. Co.*, Nos. 87-03442 P & 88-0117 P, 1989 WL 38131, at *1 (D. Me. Mar. 13, 1989) (Senator and Congressman's "monitoring" of a labor strike held protected); *Benford v. Am. Broad. Cos.*, 102 F.R.D. 208, 210 (D. Md. 1984) ("[I]nformation possessed by [unpaid, volunteer Congressional committee investigators] and transmitted to, or received by, them in the execution of legislative functions, including legitimate information-gathering, is Constitutionally privileged from discovery in this lawsuit . . . .").

[9]  *See also, e.g.*, *Brown & Williamson*, 62 F.3d at 418-19 (quashing document subpoena to subcommittee Members: "Once the legislative-act test is met, … the privilege is absolute." (quotation marks omitted)); *United States v. Biaggi*, 853 F.2d 89, 103 (2d Cir. 1988) ("[T]he Speech or Debate Clause forbids not only inquiry into acts that are manifestly legislative but also inquiry into acts that are purportedly legislative, even to determine if they are legislative in fact[] . . ." (quotation marks omitted)); *MINPECO*, 844 F.2d at 861 (quashing subpoena for Subcommittee documents: "As the [activity] was part of the legislative process, that is the end of the matter."); *Dowdy*, 479 F.2d at 226 ("Once it [i]s determined . . . that the legislative function . . . was *apparently* being performed, the propriety and the motivation for the action taken, as well as the detail of the acts performed, are immune from judicial inquiry."); *United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246, 249 (D.D.C. 1981) (quashing subpoena for Congressional documents: "The Supreme Court has rarely spoken with greater clarity.  Once it is determined . . . that [the congressional individual or entity's] actions

That test easily is met here; indeed, the question is not remotely close because all the matters into which Bannon seeks to probe are manifestly an integral part of the legislative process. This is true regardless of whether any legislation is actually produced. *See Eastland*, 421 U.S. at 509 ("Nor is the legitimacy of a congressional inquiry to be defined by what it produces. The very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises. To be a valid legislative inquiry there need be no predictable end result."). Accordingly, all information regarding the Select Committee's investigation and all of the material related to it plainly falls within the definition of legitimate legislative activity, for which the protections of the Speech or Debate Clause are absolute.

*       *       *

In sum, the Speech or Debate Clause "absolutely" protects each of the subpoena recipients in this case from being compelled to testify or produce documents[10] about the matters on which Bannon seeks information. While that constitutional protection undeniably is broad, the Supreme Court long ago acknowledged and accepted the potential costs associated with those broad protections, which were deemed essential by the Framers of the Constitution, based on the abuse by British monarchs of their powers and of judicial powers against Members of Parliament. *See, e.g.*, *Helstoski*, 442 U.S. at 488 ("[W]ithout doubt the exclusion of such evidence will make [litigation] more difficult."); *Rangel*, 785 F.3d at 24 ("Although absolute

---

fall within the legitimate legislative sphere, judicial inquiry is at an end." (quotation marks omitted)).

[10] With limited exceptions, *see supra* p. 11 n.7.

14

immunity creates 'a potential for abuse,' that potential 'was the conscious choice of the Framers buttressed and justified by history.'" (quoting *Eastland*, 421 U.S. at 510)).[11]

## II.    The Subpoenas Do Not Comply with Rule 17

The subpoenas should be quashed because they do not meet the requirements of Rule 17. *First*, as a threshold matter, the requests for documents are improper because Bannon failed to obtain court approval as required by Rule 17. *Second*, the subpoenas fail Rule 17's relevance and specificity requirements.

### A.    Bannon Failed to Obtain Court Approval

"Rule 17 provides a limited grant of authority, mentioning pretrial production only *in connection with court approval*." *Binh Tang Vo*, 78 F. Supp. 3d at 178 (emphasis added); *see also* 2 Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Crim. § 275 n.10 (4th ed. 2022) ("Leave is required for a pre-trial subpoena duces tecum.").

This requirement in Rule 17, "'leaving advance production to the court's discretion[,] is no mere technicality.  It is a vital protection against misuse or improvident use of such subpoenas.'" *Binh Tang Vo*, 78 F. Supp. 3d at 178-79 (quoting *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)).  A subpoena "is issued by a court, bears a court's seal, and is backed by the threat of court-imposed sanctions for non-compliance.  It is not the tool of a party to use as desired; rather, it is a tool provided by Rule 17 and limited to those uses authorized by Rule 17."  *Id.* at 180; *accord F.T.C. v. Atl. Richfield Co.*, 567 F.2d 96, 105 (D.C. Cir. 1977) (A

---

[11]   Indeed, the courts are so solicitous of the protections provided by the Speech or Debate Clause that they afford immediate appellate review of orders that infringe those protections. *See, e.g.*, *Meanor*, 442 U.S. at 505-06; *accord United States v. Jefferson*, 546 F.3d 300, 308-09 (4th Cir. 2008); *Rostenkowski*, 59 F.3d at 1297; *United States v. McDade*, 28 F.3d 283, 288-89 (3d Cir. 1994) (Alito, J.); *McSurely*, 521 F.2d at 1030-32; *United States v. Doe*, 455 F.2d 753, 756-57 (1st Cir. 1972), *vacated on other grounds sub nom. Gravel*, 408 U.S. 606.

"subpoena is the subpoena of the court, not the subpoena of the interested party.  It is the court which must authorize . . . the issuance of the subpoena[.]").

Without such court supervision, "Rule 17(c) would lend itself to discovery of the broadest sort—a result that the drafters of the Rule decried."  *Binh Tang Vo*, 78 F. Supp. 3d at 179 (quoting *United States v. Finn*, 919 F. Supp. 1305, 1329 (D. Minn. 1995)).  That is precisely what happened here.  Rather than seek this Court's approval, Bannon sought broad categories of documents from 13 Members, the House General Counsel, and two staffers that read more like discovery requests than trial subpoenas.  Courts in this district, however, have long made clear that "Rule 17 is not a rule for discovery.  The only discovery and inspection permitted in a criminal case is that provided by Rule 16, and it is of a very limited nature."  *United States v. Ferguson*, 37 F.R.D. 6, 7 (D.D.C 1965).  Rule 17 "does not create a separate procedure for inviting pretrial production."  *Binh Tang Vo*, 78 F. Supp. 3d at 179.  "The Rule describes only one scenario under which a subpoena may be used to obtain pretrial production—when the Court so directs"—and, to our knowledge, Bannon received no such direction from the Court here.  *Id.* As far as the subpoena recipients are aware, this Court has not sanctioned the subpoena to the Speaker, any other Member, the House General Counsel, or Congressional staff.  Because Bannon neglected to secure the required Court approval, the provisions of the subpoenas seeking documents should be quashed.

### B. The Subpoenas Seek Testimony and Documents That Are Irrelevant, and the Subpoenas Lack the Requisite Specificity

Even if Bannon could cure the deficiency discussed above, his subpoenas should be quashed for the additional and independent reason that Bannon has not shown—and cannot show—that the testimony and documents he seeks are "relevant and material."  *Stern*, 214 F.3d at 17; *see also, e.g.*, *Nixon*, 418 U.S. at 699-700; *Bebris*, 4 F.4th at 559-60.  Further, the

16

subpoenas' sweeping document requests demonstrate that the subpoenas are improper requests for discovery poorly disguised as subpoenas under Rule 17.  *See Nixon*, 418 U.S. at 699; *Libby*, 432 F. Supp. 2d at 31.

      **1.**  With the narrow exception of the limited testimony of specific Select Committee staff members as to certain topics, the testimony and documents sought by Bannon's subpoenas are irrelevant and immaterial to the issues at trial.  At trial, the Department of Justice will be required to prove to the jury the following elements for the charged crimes of contempt under Section 192: (1) that Bannon was "summoned as a witness . . . to give testimony or to produce papers"; (2) that the Select Committee subpoena was issued "by the authority of [the Select Committee] upon [a] matter under inquiry"; (3) that the information sought was "pertinent to the question under inquiry"; and (4) that Bannon "willfully [made] default."  2 U.S.C. § 192.  As we have already noted, to the extent there is a need at trial for testimony about the subpoena to Bannon, two senior staff members on the Select Committee—Ms. Amerling and Mr. Tonolli— can provide relevant testimony regarding those elements or any available defenses, and the Select Committee will not assert Speech or Debate immunity as to those staff Members for such limited testimony.  *See supra* pp. 2-3, 6.

      For example, Ms. Amerling and Mr. Tonolli can testify regarding the service of the Select Committee's subpoena on Bannon's attorney, the communications with his attorney, and why the subpoenaed information and testimony from him would have been "pertinent" to the Select Committee's work.  2 U.S.C. § 192.  We note that the support for the latter factor is already fully set out in the House's public official contempt report.  *See* H. Rep. No. 117-152, at 2-4 (2021).  Accordingly, to the extent that Bannon seeks the testimony of Ms. Amerling and Mr. Tonolli regarding such topics, the Select Committee will make them available, but a protective

order should be imposed by the Court to properly confine the questions asked of Ms. Amerling and Mr. Tonolli to information material to the elements of the offense and available defenses.[12]

Aside from that limited testimony, none of the testimony or documents sought by Bannon's subpoenas are relevant and material to his guilt or innocence of the charged crimes. *See In re Sealed Case*, 121 F.3d 729, 754–55 (D.C. Cir. 1997) ("Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation."). For example, the House Majority Leader and the Majority Whip had no authority to appoint Members to the Select Committee (*see* Rule I.11, Rules of the U.S. House of Representatives, 117th Cong. (2021) ("House Rules")) nor do they have any involvement in the issuance of subpoenas by the Select Committee (*see* H. Res. 503, 117th Cong. § 5(c)(4) (2021)). And the other subpoenaed individuals—the Speaker of the House, the Select Committee Members, the House Counsel, and other staff members—do not have relevant information beyond the information that can be provided by Ms. Amerling or Mr. Tonolli.

Nor are the subpoenas' extremely broad document requests likely to produce any non-cumulative evidence relevant and material to the charges. That is especially true given that the Department of Justice has already provided Bannon with all records it has obtained from the House, *see* ECF No. 31 at 17, and to the extent the Department of Justice names any House individuals from the House as witnesses for trial, "it will be obligated to provide discovery" of any documents in its possession going to impeachment or bias for those individuals. Oral Arg. Tr. at 95:19-23 (Mar. 16, 2022).

---

[12] Ms. Amerling and Mr. Tonolli intend to move separately for a protective order.

Indeed, Bannon has failed to identify the precise testimony he seeks from the subpoenaed individuals or explain how the subpoenaed testimony or documents would produce evidence material to his defense at trial.  The subpoenas are thus plainly improper under Rule 17.  *See, e.g.*, *Bebris*, 4 F.4th at 559 (holding that district court did not abuse its discretion in quashing a Rule 17(a) subpoena seeking testimony that would be "cumulative or immaterial"); *Libby*, 432 F. Supp. 2d at 34-35 (quashing subpoena requests for documents because "the defendant has not provided this Court with any basis upon which it can draw a reasonable inference that there is a real likelihood that the telephone records and calendar would contain relevant and admissible evidence"); *North*, 713 F. Supp. at 1449 (quashing subpoena served on President Reagan because defendant failed to "demonstrate with requisite specificity in concrete terms what further information only President Reagan could supply that would be material and essential to the defense"); *United States v. Kumar*, No. 17-CR-5-FL-1, 2019 WL 1486365, at *4-5 (E.D.N.C. Apr. 3, 2019) (granting motion to quash subpoena where defendant "failed to offer any argument or information as to the relevance of the testimony sought").

Bannon cannot satisfy Rule 17 by contending that the subpoenaed testimony and documents will provide information about the scope of the Select Committee's authority and the subpoena's validity.  This Court has recognized that Bannon has not yet demonstrated that such information—*i.e.*, "information that tends to show that the subpoena was not lawfully authorized"—"would be relevant to his defense" at trial.  Oral Arg. Tr. at 95:1--96:2 (Mar. 16, 2022).  He cannot do so.  As the Department of Justice has explained, Bannon has waived any argument that the Select Committee's subpoena was invalid due to asserted defects in the Select Committee's authority, composition, or procedures by failing to raise those arguments to the Select Committee.  *See generally* ECF No. 53.

Regardless, even if the arguments had not been waived, the scope of Congress's and the Select Committee's authority—and the validity of the subpoena—are questions of law, not of fact.  And questions of law are for this Court to decide, not the jury at trial.  *See United States v. Gaudin*, 515 U.S. 506, 513 (1995).  Although Bannon can challenge the indictment on these grounds in a motion to dismiss, as he has now done, there is no relevant testimony or evidence relating to these issues for the jury to consider at trial.

To the extent this Court disagrees and holds that Bannon can present evidence to the jury regarding the scope of the Select Committee's authority and the validity of its subpoena, any relevant testimony can be obtained from Ms. Amerling and Mr. Tonolli.  There is no basis to believe that any of the other subpoenaed individuals would have additional relevant evidence.

Moreover, any suggestion by Bannon that application of the Speech or Debate Clause would result in the violation of his right to a fair trial would be misplaced.  To the extent this Court concludes Bannon is constitutionally entitled to testimony by House personnel, the availability of Ms. Amerling and Mr. Tonolli will suffice.  And to the extent that Bannon seeks more, his inability to meet the standard articulated in Rule 17(c)—which "implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor," *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988)—demonstrates that the Constitution requires nothing more.

**2.**  Bannon's subpoenas also contravene Rule 17 because their numerous document requests lack the requisite specificity.  *See Nixon*, 418 U.S. at 699-700.  Indeed, the document requests are extraordinarily broad and are thinly veiled discovery requests, further flouting Rule 17.  *See Bowman Dairy Co.*, 341 U.S. at 220 (explaining that Rule 17(c) "was not intended to provide an additional means of discovery"); *United States v. Brooks*, 966 F.2d 1500, 1505 (D.C.

Case 1:22-mc-00060-CJN   Document 1   Filed 06/13/22   Page 31 of 40

Cir. 1992) (district court did not abuse discretion in quashing subpoena because the defendant "was improperly trying to use the subpoena as a discovery tool").

Each subpoena seeks the production of at least twenty categories of documents, most of which require the subpoenaed parties to make legal judgments to determine the documents to which they relate and which, collectively, would encompass every single document not only regarding the Select Committee's subpoena to Bannon and his contempt charge, but also the Select Committee's "membership," "staffing," "budget," and "authority . . . to issue subpoenas." *See, e.g.*, Subpoena to Nancy Pelosi, Speaker, U.S. House of Representatives, Ex. L; Subpoena to Bennie Thompson, Chairman, Select Committee, Ex. O; Subpoena to Kristin Amerling, Chief Counsel & Deputy Staff Director, Select Committee, Ex. C.

Further, Bannon's subpoenas seek documents created or received on or after January 6, 2021—covering well over a year—and each category of documents begins by seeking to compel "all documents," "all drafts," or "any" statements. *See id.* For example, the subpoenas seek "[a]ll documents . . . regarding the establishment of the January 6th Select Committee"; "[a]ll documents . . . regarding the issuance of a subpoena to Mr. Bannon"; "[a]ny private or public statement(s) by you and/or in your possession regarding Mr. Bannon's interaction with the Select Committee"; "[a]ll documents . . . regarding the factors to be considered in determining whether to bring a civil or criminal action or other sanction for an alleged failure to comply with a Congressional subpoena, involving Mr. Bannon or any other individual"; "all documents in your possession which tend to show a conflict of interest involving any Select Committee member or staff"; [a]ll documents . . . pertaining to the Select Committee's decision to deviate from precedent and not work towards an accommodation with respect to Defendant's subpoena in this matter"; and "[a]ll documents in your possession pertaining to the decision to seek to file an

amicus brief on behalf of the U.S. House of Representatives in this criminal case, and its contents." *Id.*

These expansive requests make plain that the subpoenas are not particularized demands for evidentiary material that Bannon can use at trial; they are instead a classic prohibited "fishing expedition." *Nixon*, 418 U.S. at 699-700; *see also United States v. Mays*, 246 F.3d 677, 2000 WL 1860727, at *1 (9th Cir. Dec. 18, 2000) (affirming district court's quashing of a Rule 17(c) subpoena because it requested "*all* documents relating to *any and all* disciplinary action taken by" various entities); *United States v. Louis*, No. 04-203, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (quashing Rule 17(c) subpoena that sought " 'any and all' documents relating to several categories of subject matter (some of them quite large), rather than specific evidentiary items"). As another court in this district has explained, "[I]f the [subpoenaing] party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Libby*, 432 F. Supp. 2d at 31 (internal quotation marks omitted); *see also United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989).

Compliance with the Bannon subpoenas would impose a mammoth burden on the Select Committee, which here is sufficient reason to quash. Under Rule 17, a court may determine that "the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case." *United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000); *see also United States v. Bibby*, 752 F.2d 1116, 1125 (6th Cir. 1985) (affirming court's decision not to issue Rule 17 subpoena where record showed that "defendants would not be able to accomplish that which they wished to accomplish with the subpoena and that compliance with the subpoena would indeed be burdensome"). As Bannon's subpoenas' far-reaching requests illustrate, he is not focused on a

particularized search for relevant evidence: he seeks broad swaths of documents with the hope

that something helpful might turn up.  That is not how Rule 17 works, and his subpoenas must be

quashed.

### III. Bannon Cannot Show "Extraordinary Circumstances" That Would Require the Testimony of High-Ranking Government Officials

 Bannon's subpoenas should be quashed for an additional reason: high-ranking

government officials may not be forced to testify about their official actions in litigation to which

they are not a party, absent "extraordinary" or "exceptional" circumstances.  *See, e.g.*, *United*

*States v. Morgan*, 313 U.S. 409, 422 (1941); *Simplex*, 766 F.2d at 586-87.[13]  "This rule is based

on the notion that '[h]igh ranking government officials have greater duties and time constraints

than other witnesses' and that, without appropriate limitations, such officials will spend an

inordinate amount of time tending to pending litigation."  *Bogan v. Bos.*, 489 F.3d 417, 423 (1st

Cir. 2007) (quoting *In re United States ("Kessler")*, 985 F.2d 510, 512 (11th Cir. 1993).  The

subpoenaing party "bears the burden of proving extraordinary circumstances."  *In re United*

*States ("Bernanke")*, 542 F. App'x 944, 948 (Fed. Cir. 2013); *accord Lederman*, 731 F.3d at

203; *In re United States ("Reno & Holder")*, 197 F.3d 310, 316 (8th Cir. 1999).

The high-ranking official doctrine applies in the criminal context as well as in the civil

context.  *See, e.g.*, *Reno & Holder*, 197 F.3d at 310-11, 313-14, 316 (quashing capital

defendant's subpoenas seeking to compel testimony of Attorney General Janet Reno and Deputy

---

[13] *Accord Warren Bank v. Camp*, 396 F.2d 52, 56-57 (6th Cir. 1968); *see also In re United States ("Bernanke")*, 542 F. App'x 944, 948 (Fed. Cir. 2013); *Lederman*, 731 F.3d at 203; *Bogan v. Bos.*, 489 F.3d 417, 423 (1st Cir. 2007); *In re United States ("Reno & Holder")*, 197 F.3d 310, 313-14 (8th Cir. 1999); *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In re United States ("Kessler")*, 985 F.2d 510, 512-13 (11th Cir. 1993); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231-32 (9th Cir. 1979).

Attorney General Eric Holder in support of defendant's motion to set aside jury's verdict).[14]

And it applies even after the official leaves office.  *See, e.g.*, *Moriah v. Bank of China Ltd.*, 72 F.

Supp. 3d 437, 440-41 (S.D.N.Y. 2014).

Members of Congress, as constitutional officers of the United States, are quintessential

high-ranking government officials.  *See, e.g.*, *Springfield Terminal Ry. Co. v. United Transp.*

*Union*, No. 89-0073, 1989 WL 225031, at *2 (D.D.C. May 18, 1989) (refusing to compel

"ranking Minority Member of the House Appropriations Committee" either to testify at

deposition or to produce documents because such discovery would "disrupt [his] work"); *accord*

*Blankenship v. Fox News Network, LLC*, No. 19-CV-00236, 2020 WL 7234270, at *5-8 (S.D.

W.Va. Dec. 8, 2020) (granting motion to prohibit depositions of Senators Mitch McConnell and

Cory Gardner); *Moriah*, 72 F. Supp. 3d at 440-41 (granting motion to quash deposition of former

Representative Eric Cantor); *Feldman v. Bd. of Educ. Sch. Dist. #1 City & Cnty. of Denver*, No.

09-CV-01049, 2010 WL 383154, at *1 (D. Colo. Jan. 28, 2010) (granting motion to prevent

deposition of Senator Michael Bennet); Order Granting Mots. to Quash Subpoenas Ad

Testificandum & Duces Tecum Served on Congressmen Berman, Filner, & Sherman at 2-3,

---

[14]  *See also Kessler*, 985 F.2d at 511-13 (quashing criminal defendants' subpoena seeking to compel testimony of FDA commissioner in support of motion to dismiss indictment on ground of selective prosecution); *United States v. Dowdy*, 440 F. Supp. 894, 896-97 (W.D. Va. 1977) (quashing criminal defendant's subpoena seeking to compel trial testimony of district court judge whose actions, defendant claimed, "coerced her into testifying and relinquishing her Fifth Amendment privilege against self-incrimination before the grand jury" and thus whose testimony, defendant claimed, would "provid[e] her with a defense to the charge of making false statements before [the] grand jury"); *Bardoff v. United States*, 628 A.2d 86, 90 (D.C. 1993) (affirming trial court's quashal of criminal defendants' subpoenas seeking to compel testimony of Senators and Senate Committee counsel because, *inter alia*, defendants "failed to proffer any reason why others present who did not hold such high office could not provide the testimony"); *cf. United States v. Koubriti*, 305 F. Supp. 2d 723, 754, 765 (E.D. Mich. 2003) (denying criminal defendants' motion to require Attorney General John Ashcroft to show cause why he should not be held in contempt for violating court order prohibiting public communications about prosecution).

*Cano v. Davis*, No. 01-CV-08477 (C.D. Cal. Mar. 28, 2002) (recognizing that "exceptional circumstances" needed to compel discovery from Members of Congress), attached as Ex. Q; *Bardoff v. United States*, 628 A.2d 86, 90, 93 (D.C. 1993) (recognizing that Senators "hold . . . high office" for purpose of this doctrine).

As the D.C. Circuit has noted, "service in the United States Congress is not a job like any other." *Rostenkowski*, 59 F.3d at 1312. "[T]he life of a congressman—as incumbent legislator and perpetual candidate for office," is one in which the Member's "official day ends only after a round of nominally 'social' events at which he is obliged to appear, and whose weekends and holidays are only an opportunity to reconnect with his constituents." *Id.*

High-level Congressional staff, such as Mr. Buckley and the House General Counsel are also shielded by this doctrine. *See McNamee v. Mass.*, No. 12-40050, 2012 WL 1665873, at *2 (D. Mass. May 10, 2012) (quashing subpoena served on House Member's former chief of staff, who "held a position of substantial importance to the operation of that governmental body"); *Bardoff*, 628 A.2d at 90 (quashing subpoena to House Select Committee counsel); *cf. Lederman*, 731 F.3d at 203 (quashing subpoena to former deputy mayor). As Staff Director to the Select Committee, Mr. Buckley reports directly to Chairman Thompson, works with all Members of the Select Committee, and supervises a large staff. He is responsible for supervising all staff work regarding planning and preparation for future Select Committee hearings, planning and supervising investigative work, and overseeing production of the Select Committee's upcoming final report.

The General Counsel to the House of Representatives reports directly to the Speaker of the House; provides legal advice and assistance to House committees, officers and employees on matters related to their official duties; represents the House, Members, committees, officers and

25

employees, both as parties and witnesses, in litigation and in connection with requests for information arising from or relating to the performance of their official duties and responsibilities; and supervises the staff of the Office of General Counsel.  *See* House Rule II.8.

Requiring testimony from Mr. Buckley and the House General Counsel would interfere significantly with their official duties, which are expected to continue unabated during the period of the trial.

Bannon plainly cannot establish "extraordinary circumstances" to justify these subpoenas.  Ms. Amerling and Mr. Tonolli will be available to testify to relevant questions from Bannon's counsel.  There should be no questions material to Bannon's defense that the other subpoenaed individuals would uniquely be able to answer.  Accordingly, Bannon cannot establish that the information he seeks is not available elsewhere.  *See, e.g.*, *Bogan*, 489 F.3d at 423 ("Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated," but "even in such cases, discovery is permitted only where it is shown that other persons cannot provide the necessary information."); *Reno & Holder*, 197 F.3d at 314 ("If other persons can provide the information sought, discovery will not be permitted against such an official."); *In re F.D.I.C.*, 58 F.3d 1055, 1062 (5th Cir.1995) ("We think it will be the rarest of cases . . . in which exceptional circumstances can be shown where the testimony is available from an alternate witness."); *Kessler*, 985 F.2d at 512 (no extraordinary circumstances where "[t]he record discloses that testimony was available from alternate witnesses").

Furthermore, the information Bannon seeks cannot properly be deemed essential to his case.  *See Reno & Holder*, 197 F.3d at 314 (requiring subpoenaing party to establish that high level governmental official "possess[es] information essential to his case which is not obtainable

from another source"); *accord Blankenship*, 2020 WL 7234270, at *6; *Brennan v. Phila.*, 388 F. Supp. 3d 516, 520 (E.D. Pa. 2019); *Hankins v. Phila.*, No. 95-1449, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996).  Bannon has not established (and cannot establish) that any of the subpoenaed Members, or Mr. Buckley, or the House General Counsel, will, in fact, provide testimony that is in any way exculpatory or otherwise supportive of his position.  Indeed, we have no reason to believe that this is the case.  *See* Brief of United States House of Representatives as *Amicus Curiae* in Support of the Department of Justice (May 25, 2022) (ECF No. 76-2).  Furthermore, as noted above, *see supra* p. 20, the issues as to which Bannon apparently seeks this testimony are issues for the Court, not the jury.  For these reasons, Bannon cannot satisfy his burden of proving "extraordinary circumstances."

## IV.    The Subpoena to the House General Counsel Improperly Seeks Privileged Information

Request #16 in the subpoena to the House General Counsel, seeks: "All documents in your possession pertaining to the decision to seek to file an amicus brief on behalf of the U.S. House of Representatives in this criminal case, and it[s] contents."  Subpoena to Douglas Letter, General Counsel, U.S. House of Representatives, Ex. B.  Request #22 seeks:

> All documents in your possession that informed the position you took in your November 2, 2021, FBI interview that the Select Committee lacked a ranking minority member, as well as all documents that lead you to change this position in the amicus brief filed in this matter on May 10, 2022, wherein you state that Rep. Liz Cheney (WY) is the ranking minority member.

*Id.*  These requests seek information protected by the attorney-client privilege and work-protect protection, and should be quashed.  *See, e.g.*, *United States v. Hoeffner*, 254 F.R.D. 302, 307 (S.D. Tex. 2008) (quashing Rule 17(c)(2) subpoena to non-party because compliance "would require the disclosure of privileged and protected matter"); *United States v. Reyes*, 239 F.R.D.

591, 598 (N.D. Cal. 2006) (a Rule 17(c) subpoena "should be quashed or modified if it calls for privileged matter") (internal quotation marks omitted).

Bannon is free to have his counsel present to this Court arguments against the points made in that amicus brief.  But to the extent he requests communications between the House General Counsel and House personnel, they are obviously protected by the attorney-client privilege.  *See, e.g.*, *In re Lindsey*, 158 F.3d 1263, 1269 (D.C. Cir. 1998) (discussing government attorney-client privilege); *Upjohn Co. v. United States*, 449 U.S. 383, 389-97 (1981).  To the extent documents exist that are responsive to this request, but do not include such communications, they constitute attorney work-product, because they will reflect the "mental impressions" of the House General Counsel.  *See generally Hickman v. Taylor*, 329 U.S. 495 (1947).  Work protect protection extends to documents "prepared or obtained because of the prospect of litigation."  *Equal Emp. Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999) (internal quotation marks omitted).  By definition, all documents relating to the prosecution of Bannon, and the House's decision to file an amicus brief, meet this test. Indeed, "disclosing information that reveals a behind-the-scenes account of the [House's] litigation decisions could also undermine the adversary process, something the work-product privilege is designed to protect."  *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 800 F. Supp. 2d 202, 216-17 (D.D.C. 2011).  While the work product doctrine is not absolute, Bannon does not and cannot make any showing as to why he can defeat it here.

28

## **CONCLUSION**

For the reasons stated above, the subpoenas to the Members of Congress, Select

Committee staff members, and the House General Counsel should be quashed.  As explained

above, the Select Committee is willing to make staff members Kristin Amerling and Sean

Tonolli available for appropriately tailored testimony at Bannon's request.


Respectfully submitted,

DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*
MICHELLE S. KALLEN
  *Special Litigation Counsel*
STACIE M. FAHSEL
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

June 13, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2022, I caused the foregoing document to be filed with the Court and served on the parties via electronic mail.

Douglas N. Letter