**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| IN RE NON-PARTY SUBPOENAS | : : : : | Misc. Case No. 22-60 (CJN) |
| UNITED STATES OF AMERICA | : : : : : | Criminal No. 21-670 (CJN) |
| v. | : : | |
| STEPHEN K. BANNON, | : : | |
| *Defendant.* | : : | |

## OPPOSITION TO MOTION TO QUASH

Defendant Stephen K. Bannon, by and through his undersigned counsel and pursuant to the Fifth and Sixth Amendments to the United States Constitution, respectfully requests that this Court deny the Motion To Quash.[1] In support this Opposition we state as follows:

### Summary Of Argument

Mr. Bannon faces trial on criminal charges – two counts of Contempt of Congress, in violation of 2 U.S.C. § 192 – which stem from his conduct after receiving a subpoena dated September 23, 2021, issued on behalf of the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee"). The Government in that case contends that

---

[1] Filed by the Honorable Nancy Pelosi, the Honorable Bennie G. Thompson, the Honorable Elizabeth L. Cheney, the Honorable Adam B. Schiff, the Honorable James B. Raskin, the Honorable Susan E. Lofgren, the Honorable Elaine G. Luria, the Honorable Peter R. Aguilar, the Honorable Stephanie Murphy, the Honorable Adam D. Kinzinger, the Honorable Jim Clyburn, the Honorable Steny Hoyer, David Buckley, Douglas Letter, Kristen Amerling, and Sean Tonolli.

Congress is the "complainant."[2] The nine Select Committee members who are movants here –

Reps. Thompson, Cheney, Schiff, Raskin, Lofgren, Luria, Aguilar, Murphy, and Kinzinger – set

in motion Mr. Bannon's prosecution by failing to accept his assertion of executive privilege (on

orders of President Donald J. Trump, the holder of the privilege) and by failing to grant Mr.

Bannon's reasonable request for an accommodation that would have allowed a judge to resolve

the privilege issues in a civil enforcement proceeding (instead of facing criminal prosecution) or

for a one week extension to resolve the competing positions asserted on the executive privilege

issue by Presidents Trump and Biden, in light of the then pending lawsuit, *Trump v. Thompson*.

The Select Committee Members take a different view when a subpoena is served on them.

Now it is the Select Committee members who seek to invoke a privilege in the hope that they can

avoid testifying at Mr. Bannon's trial. Three other movants – Reps. Pelosi, Hoyer, and Clyburn –

also make an about-face. These three Members of Congress do so after having already waived

Speech or Debate Clause protection by submitting themselves to the jurisdiction of this Court in

Mr. Bannon's criminal case when they filed an amicus brief asserting arguments on factual and

legal issues involved in that criminal case.[3] The final four movants – Messrs. Buckley, Letter,

Tonolli, and Ms. Amerling – are key congressional staff. They, together with the Members of

Congress identified above, possess critical exculpatory evidence that is essential to Mr. Bannon's

ability to have a fair trial.  Mr. Letter already has served as a fact witness for the Government in

---

[2] *See* Criminal No. 21-670 (CJN), Hearing Tr. March 16, 2022, at 26 (Congress is "essentially, the complainant in this case").

[3] *See* Criminal No. 21-670 (CJN), Brief of the United States House of Representatives as Amicus Curiae in Support of the Department of Justice [Doc. 76-2].

the case [US-000245-000252] [4]; but now seeks to remove himself by invoking privilege when called upon to testify by the Defendant.

The Motion To Quash creates a fundamental conflict between Mr. Bannon's Fifth and Sixth Amendments rights to compulsory process and to present a defense at trial, and the Movants' Speech or Debate Clause privileges. Because Movants set in motion the prosecution of Mr. Bannon, they cannot now retreat behind the Speech or Debate Clause. Their assertion of privilege must yield to the due process and liberty interests of Mr. Bannon. If the Court grants Movant's Motion To Quash, then the only next step consistent with due process would be to either exclude all congressional evidence at Mr. Bannon's trial or dismiss the charges entirely to preserve Mr. Bannon's Fifth and Sixth Amendment Rights. *See* discussion of *Rainey* case *infra* pp. 14-15 (dismissal of obstruction of Congress charge where subpoenaed members of Congress validly asserted Speech or Debate privilege). Otherwise, there would be a one-sided presentation of "evidence" at the criminal trial that is wholly untested by cross-examination or the ability to elicit critical exculpatory evidence from key Members of Congress and staff. The Constitution requires either the attendance of these congressional witnesses, or the exclusion of all congressional evidence at the criminal trial.

## **Factual Background**

On September 23, 2021, Kristen Amerling, Esquire, Chief Counsel and Deputy Staff Director of the Select Committee, served Mr. Bannon with a subpoena by email to his counsel,

---

[4] Bates Number references herein are to documents produced by the Government in Criminal No. 21-670 (CJN).

Robert J. Costello, Esquire. The subpoena directed Mr. Bannon to produce certain documents by October 7, 2021, and to appear for testimony on October 14, 2021. [US-000002].

On October 6, 2021, Mr. Costello received an emailed letter from Justin Clark, Esquire, counsel to President Trump, which stated in relevant part:

> President Trump vigorously objects to the overbreadth and scope of these requests and believes they are a threat to the institution of the Presidency and the independence of the Executive Branch.
>
> Through the Subpoenas, the Select Committee seeks records and testimony purportedly related to the events of January 6th, 2021, including but not limited to information which is potentially protected from disclosure by the executive and other privileges, including among others, the presidential communications, deliberative process, and attorney-client privileges. President Trump is prepared to defend these fundamental privileges in court
>
> Therefore to the fullest extent permitted by law, President Trump instructs Mr. Bannon to: (a) where appropriate, invoke any immunities and privileges he may have from compelled testimony in response to the Subpoena; (b) not produce any documents concerning privileged material in response to the Subpoena; and (c) not provide any testimony concerning privileged material in response to the Subpoena.

[US-000971].

On October 7, 2021, Mr. Costello sent Ms. Amerling a letter detailing the communication from President Trump's counsel and further advised:

> It is therefore clear to us that since the executive privileges belong to President Trump, and he has, through his counsel, announced his intention to assert those executive privileges enumerated above, we must accept his direction and honor his invocation of executive privilege. As such, until these issues are resolved, we are unable to respond to your request for documents and testimony…We will comply with the directions of the courts, when and if they rule on these claims of both executive and attorney client privileges. Since these privileges belong to President Trump and not to Mr. Bannon, until these issues are resolved, Mr. Bannon is legally unable to comply with you subpoena requests for documents and testimony.

[US-000234 - 000235].

On October 8, 2021, Mr. Costello received a letter from Hon. Bennie G. Thompson, Chairman of the Select Committee, summarily rejecting all claims of privilege by President Trump with respect to Mr. Bannon. [US-000238 - 000239]. The letter advised that Mr. Bannon was obligated to produce documents "[r]egardless of any purported privilege assertion by Mr. Trump" and warned that if Mr. Bannon did not ignore President Trump's invocation of executive privilege and respond the subpoena, the Select Committee would view this as "willful non-compliance with the Subpoena….which could result in a referral from the House to the Department of Justice for criminal charges." *Id.*

In response to Chairman Thompson's October 8, 2021 letter, on October 13, 2021, Mr. Costello sent a letter to Chairman Thompson wherein he provided legal support for Mr. Bannon's reliance on President Trump's invocation of executive privilege and reiterated that Mr. Bannon would further respond to the subpoena if President Trump withdrew his claims of privilege, or if a court resolved the legal issues. [US-000315 – 000316]. The letter stated, in pertinent part, as follows:

> As an initial matter, your use of the word "defiance" is inappropriate. Mr. Bannon's position is not in defiance of your Committee's subpoena; rather, Mr. Bannon noted that President Trump's counsel stated that they were invoking executive and other privileges and therefore directed us not to produce documents or give testimony that might reveal information President Trump's counsel seeks to legally protect. Mr. Bannon has testified on three prior occasions, before the Mueller Investigation, The House Intelligence Committee and the Senate Intelligence Committee. In each of those instances, when President Trump waived his invocation of the executive privileges, Mr. Bannon testified. As recently as today, counsel for President Trump, Justin Clark, Esq., informed us that President Trump is exercising his executive privilege; therefore, he has directed Mr. Bannon not to produce documents or testify until the issue of executive privilege is resolved. Your Committee will have the right to challenge that exercise or its scope. That is an issue between the Committee and President Trump's counsel and Mr. Bannon is not required to respond at this time. See *Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, FN 34 (D.D.C. 2019) ("The President can certainly identify sensitive information that he deems subject to executive privilege, and his doing so gives rise to a legal duty on the

part of the aide to invoke the privilege on the President's behalf when, in the course of his testimony, he is asked a question that would require disclosure of that information.")[.]

Until such time as you reach an agreement with President Trump or receive a court ruling as to the extent, scope and application of the executive privilege, in order to preserve the claim of executive and other privileges, Mr. Bannon will not be producing documents or testifying. As noted previously, Mr. Bannon will revisit his position if President Trump's position changes or if a court rules on this matter.

*Id.*

On October 13, 2021, Mr. Costello telephoned Sean Tonolli, Senior Investigative Counsel for the Select Committee, to inquire (1) whether it was possible for one of President Trump's lawyers to attend the deposition and make privilege objections on President Trump's behalf; and (2) whether the deposition could be conducted remotely. [US-000317]. Mr. Tonolli understood that "the thrust of these questions" by Mr. Costello were consistent with an ongoing effort to reach accommodation that would allow Mr. Bannon to appear in response to the subpoena. *Id.*

Because no accommodation was accepted by the Select Committee, notwithstanding the constitutional imperative requiring the parties to try to reach one, Mr. Bannon did not produce the subpoenaed documents or appear for testimony on October 14, 2021. [US-000277 -000288]. On October 15, 2021, Chairman Thompson sent Mr. Costello a letter that included a blanket rejection of assertions of privilege by President Trump. [US-000299 - 000300]. The letter asked Mr. Bannon to provide any additional information he wished to the Select Committee by October 18, 2021. [US-000301].

On October 18, 2021, Mr. Costello sent Chairman Thompson a second letter, which stated:

We write on behalf of Stephen Bannon. We have just been advised of the filing of a lawsuit in federal court for the District Court of Columbia entitled Donald J. Trump v. Bennie Thompson, et al., 21-Civ-02769 (D.D.C. 2021). In light of this late filing, we respectfully request a one-week adjournment of our response to your latest letter so that we might thoughtfully assess the impact of this pending litigation.

[US-000290]. On October 19, 2021, Chairman Thompson sent Mr. Costello a letter that summarily rejected Mr. Costello's request for a one-week adjournment. [US-000275]. On October 21, 2021, the House of Representatives voted 229-202, largely along party lines, to hold Mr. Bannon in criminal contempt of Congress, and the matter was referred to the U.S. Attorney's Office for the District of Columbia. [US-000459 – 000504]. On November 12, 2021, a grand jury charged Mr. Bannon in a two-count indictment. [Criminal No. 21-670 (CJN), Doc. 1].[5]

Members of the Select Committee have made public statements that reveal their bias against Mr. Bannon. To note just a few examples:

- Those who have come forward to the @January6thCmte committee have chosen to do the right thing by showing up, speaking to Congress, and providing information. There is no one above the law, and we continue to gather information and facts about the events of January 6th." Elaine Luria (@RepElaineLuria), Twitter (Apr. 13,2022,10:30 PM),https://twitter.com/RepElaineLuria/status/1514430760996024321?ref_src=twsrc%5Etfw.

---

[5] Count One charged Mr. Bannon with Contempt of Congress, in violation of 2 U.S.C. § 192, alleging that "having been summoned as a witness by the authority of the U.S. House of Representatives to give testimony upon a matter under inquiry before a committee of the House, did willfully make default – that is, in a matter under inquiry before the House Select Committee to Investigate the January 6th Attack on the United States Capitol, BANNON refused to appear to give testimony in response to a subpoena dated September 23, 2021, issued by the Select Committee and commanding BANNON to appear for a deposition at 10:00 a.m. on October 14, 2021." *Id*. at 8. Count Two also charged him with Contempt of Congress, in violation of 2 U.S.C. § 192, alleging that "having been summoned as a witness by the authority of the U.S. House of Representatives to produce papers upon a matter under inquiry before a committee of the House, did willfully make default – that is, in a matter under inquiry before the House Select Committee to Investigate the January 6th Attack on the United States Capitol, BANNON refused to produce documents and communications, provide a log of any withheld records, certify a diligent search for records, and comply in any way with a subpoena dated September 23, 2021, issued by the Select Committee and commanding BANNON to produce documents and communications as delineated therein." *Id*. at 9.

- No one is above the law. No one can run out the clock. Our Select Committee will find the truth." Stephanie Murphy (@RepStephMurphy), Twitter (Dec. 1, 2021, 8:55 PM), https://twitter.com/repstephmurphy/status/1466224521371914243.

- No one is above the law. Sadly, a few of Mr. Trump's aides continue to think they are. Zoe Lofgren (@RepZoeLofgren), Twitter (Mar. 28, 2022, 6:30 PM), https://twitter.com/repzoelofgren/status/1508574278207393795.

- Steve Bannon was given every opportunity to comply with a lawful subpoena. He chose instead to make specious claims of executive privilege. Tonight, we voted to hold him in criminal contempt. Despite what he and Trump may believe, no one is above the law." Adam Schiff (@RepAdamSchiff), Twitter (Oct. 19, 2021, 7:58 PM), https://twitter.com/RepAdamSchiff/status/1450612312407257089.

- And to be a strong, self-sustaining, self-respecting democracy, we can't allow people to decide that they are above the law and that they are more important than our constitutional prophecies. Olafimihan Oshin, *Raskin: Pence was a Hero on Jan. 6 for Resisting 'Pressure Campaigns' and 'Coercive Efforts'*, The Hill (June 19, 2022, 11:37 AM), https://thehill.com/homenews/3529123-raskin-pence-was-a-hero-on-jan-6-for-resisting-pressure-campaigns-and-coercive-efforts/.

- Anyone who attempts to hinder our investigation, or who refuses to comply with a subpoena, can expect that we will use every tool at our disposal to ensure the Committee's work can continue. No one is above the law." Press Release, Pete Aguilar, Member, House Select Committee to Investigate the January 6th Attack on the United States Capitol, Aguilar Issues Statement on Grand Jury Indictment of Steve Bannon (Nov. 13, 2021) https://aguilar.house.gov/2021/11/13/aguilar-issues-statement-grand-jury-indictment-steve-bannon/

On May 10, 2022, Douglas N. Letter, Esq., General Counsel to the U.S. House of Representatives, hand-filed a Motion with the Clerk of the Court seeking leave to file an amicus curiae brief in support of both the government's Opposition to Mr. Bannon's Motion to Dismiss [Criminal No. 21-670 (CJN), Doc. 65] and the government's Motion in Limine to exclude evidence relating to objections to the subpoena [Criminal No. 21-670 (CJN), Doc. 53]. The House's decision

to file an amicus curiae brief in this case was approved by the three Democrat members of the House Bipartisan Legal Advisors Group ("BLAG") – namely, Reps. Pelosi, Hoyer, Clyburn.

Also on May 10, 2022, Speaker Pelosi issued a press release. Speaker Pelosi's press statement asserted that the vote to hold Mr. Bannon in contempt of Congress "upheld the genius of our Constitution[.]"[6] Speaker Pelosi further stated in the public statement, follows:

> The Department of Justice is to be commended for moving to hold Bannon accountable for his blatant defiance of a lawful subpoena.  Now, Bannon is seeking to dismiss the case, claiming that the Select Committee to Investigate the January 6th Attack does not have standing to compel his testimony.  By addressing many of Bannon's baseless arguments before the D.C. District Court, the House continues to defend this Constitutional power as well as its essential prerogative to establish its own rules and practices.
>
> No one is above the law. As the House's amicus brief makes crystal clear, *the subpoena of Steve Bannon issued by the Select Committee is legally valid, urgently needed and must be enforced.*

*Id.* (emphasis added).

On June 7, 2022, counsel for Mr. Bannon issued subpoenas for documents and testimony to the Movants here. *See* Motion To Quash Ex. A to P. The subpoenas sought specific information critical to Mr. Bannon's defense in this matter, which is not available from any other source.

On June 9, 2022, counsel for Mr. Bannon and counsel for the U.S. House of Representatives met and conferred via telephone. The Motion to Quash states that "[c]ounsel met, but were unable to agree on any withdrawal or narrowing of the subpoenas." Motion To Quash at 3. But that is not the whole story. Counsel for Mr. Bannon specifically offered to "make the process as accommodating and unintrusive as possible" by offering to arrange the date of testimony so that Members would not miss votes or be required to attend trial when the House was not in session. In addition, counsel for Mr. Bannon specifically offered – among other accommodations to reduce the burden of document production – to "work with individual Members on accommodations with

---

[6] Press Release, Nancy Pelosi, Speaker of the U.S. House of Representatives (May 10, 2022).

respect to the production of documents." Counsel for the U.S. House of Representatives did not take us up on those very broad offers of accommodation. House counsel acknowledged during that conference that none of the Committee's staffers has any decision-making authority. Therefore, by House Counsel's own admission, none of the staffers therefore would be competent witnesses to testify to some of the most fundamental issues Mr. Bannon seeks to raise in his defense, as detailed in earlier pleadings in this case. Only the Members of Congress would be competent witnesses on issues including the decision-making process concerning the composition of the Select Committee, the status of any "ranking minority member," the refusal to engage in the constitutionally mandated accommodation process, the rejection of executive privilege, and other key defense issues to be put before the jury at trial.

On June 13, 2022, Movants filed their Motion to Quash on the grounds that: (1) the subpoenas are barred by the Speech or Debate Clause; (2) that the subpoenas lack the specificity required by Fed. R. Crim. Pro. 17; (3) that Mr. Bannon has not established "extraordinary" or "exceptional" circumstances that would permit him to compel the appearance and testimony of a "high-ranking government official"; and (4) that the subpoena to House General Counsel seeks privileged information. Motion To Quash, Misc. Case No. 22-60 (CJN) [ECF 1 at 5].

Counsel for Mr. Bannon communicated with counsel for Movants in order to seek agreement on a consent briefing schedule on this Motion to Quash. Counsel for Movants offered Mr. Bannon *an extra 24 hours* within which to file an opposition. Counsel for Mr. Bannon declined this offer – hence our filing today.

Because each of Movant's arguments must yield to the due process and liberty interests of Mr. Bannon, we respectfully request that the Court deny the Motion to Quash. In the alternative,

should this Court grant the Motion to Quash in whole or in part, we ask the Court to exclude all congressional evidence at his criminal trial.

## ARGUMENT

**Members Of Congress And Staff Cannot Initiate A Criminal Prosecution For Criminal Contempt Of Congress Only To Retreat Behind The Speech Or Debate Clause When Summoned As Witnesses On The Alleged Contempt.**

The Speech or Debate Clause provides as follows:

> The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

U.S. Const. Art. I § 6, cl. 1. To understand the scope afforded by the Speech or Debate Clause, it is important to understand its history. The clause traces its roots to England, where centuries of monarchs used the criminal and civil court systems to control dissent in the legislature. *United States v. Johnson*, 383 U.S 169, 178 (1966). The language of the Speech or Debate Clause mirrors the language of its predecessor in the English Bill of Rights of 1689, which states "'[t]hat the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament' 1 W. & M., Sess. 2, c. 2." *Id.* The "predominate thrust" of the Speech or Debate Clause is to protect critical or disfavored legislators against criminal charges by a hostile executive branch, or criminal conviction by a hostile judiciary. *Johnson*, *supra*, 383 U.S. at 182. Thus, the Speech or Debate Clause protects members of Congress and their aides against prosecutions that directly impinge upon or threaten the legislative process." *Gravel v. United States* 408 U.S. 606, 614 (1972).

Because the Speech or Debate Clause "was designed to preserve legislative independence, not supremacy," *Johnson,* 383 U.S. at 178, there are circumstances where a member of Congress

11

(and staff) are subject to the compulsory process of the courts. For instance, in *Gravel v. United States*, the Supreme Court explicitly held that the Speech or Debate Clause does not immunize a member of Congress from service of process as a defendant in a civil matter or as a witness in a criminal case. 408 U.S. 606, 614 (1972); *see also United States v. Cooper*, 4 Dall., 341 (1800) ("The constitution gives to every man, charged with an offence, the benefit of compulsory process, to secure the attendance of his witnesses. I do not know of any privilege to exempt members of congress from the service, or the obligations, of a subpoena, in such cases.").

Where – as here – actions by a Member of Congress or staff infringe upon the constitutional rights of a citizen, their acts are not protected by the Speech or Debate Clause. *McSurely v. McClellan*, 553 F.2d 1277, 1288 (1976) (Speech or Debate Clause did not immunize senator and his aides were not immune from liability in private suit for damages in which plaintiffs alleged that documents taken in violation of Fourth Amendment from plaintiffs' home by state authorities, after being taken to Washington, DC, by investigator employed by Senate subcommittee, were disseminated outside halls of Congress).

The Select Committee violated Mr. Bannon's constitutional right to due process in several respects. First, the Select Committee issued its subpoena without lawful authority. An element of the offense in the criminal trial will be that Mr. Bannon was "summoned as a witness by the authority of the U.S. House of Representatives." [Criminal No. 21-670 (CJN), Doc. 1 at ¶¶ 23 & 25]. Each of the Movants has first-hand knowledge that is exculpatory on this element. Second, the Select Committee rejected Mr. Bannon's reasonable request for an accommodation (a one-week extension), even though much longer extensions were granted to many Select Committee deponents. Again, each Movant has first-hand knowledge that is exculpatory on this critical trial issue.

The Framers did not rank some constitutional protections as superior to others. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 561 (1976). The Sixth Amendment entitles Mr. Bannon to a "meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Inherent in this right is the right to offer testimony of witnesses and compel their attendance. *Washington v.* Texas, 388 U.S. 14, 19 (1967) (it is fundamental to due process that "[j]ust as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense"); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (few rights are more fundamental than that of an accused person to present witnesses in his own defense.). Therefore, if this Court concludes that the Speech or Debate Clause immunizes Movants from complying with the subpoenas, dismissal is the only appropriate remedy to safeguard Mr. Bannon's Fifth and Sixth Amendment rights.

Courts have held that dismissal of an indictment is the appropriate remedy when the government's assertion of a privilege prevents a criminal defendant from securing documents and testimony relevant and material to defense's case. *See Roviario v. United States*, 353 U.S. 53 (1957) (dismissal required where government refused to disclose identity of undercover witness who might be a material defense witness as to whether accused knowingly transported narcotics); *United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990) (dismissal of prosecution for making false statements to government about CIA activities in which defendant was involved because nature of defendant's assignments was central to the charges against him and government's assertion of State Secrets privilege with respect to same deprived defendant of his right to present a meaningful defense); *See also* [Ex. 1] Trial Trans., Day 1 Afternoon Session, *United States v. David Rainey*, Crim. No. 12-CR-00291-KDE-DEK (E.D. La. Jul. 14, 2015), ECF No. 510.

In the *Rainey* case, (Crim. No. 12-CR-00291-KDE-DEK), the district court dismissed an obstruction of Congress charge against a *Deepwater Horizon* executive because the Court found that  because the subpoenaed Members of Congress validly invoked their Speech or Debate privilege and could not be compelled to testify, dismissal of the charge was the only way to preserve the accused's right to a fair trial[7]:

> As seen earlier today, the Court found in favor of the House, and its ruling supported the House's long-standing constitutional privilege under the Speech or Debate Clause. The Court must now address what implication that ruling has on the defendant's right to a full trial and his constitutionally guaranteed rights, which I have just described.
>
> Thus, the Court finds that, similar to the holding in [*U.S. v. Fernandez*, 913 F.2d 148 which is a Fourth Circuit case, 1990,  and consistent with the rulings in *Jencks v. United States*, 353 U.S. 657, and *Roviaro v. U.S.*, 353 U.S. 53, the government's prosecution of Count 1 under § 1505 must give way where the defendant seeks relevant, material, noncumulative evidence related to his defense, but also where he has been precluded from obtaining this evidence due to the invocation of a constitutional privilege by a branch of the very same government involved in his prosecution. Because the defendant is not able to put on a full and fair defense, consistent with his constitutional rights and consistent with an element of the crime as described by the Fifth Circuit and set forth in the jurisprudence, under these circumstances the Court finds the only appropriate remedy is dismissal of Count 1.

[Ex. 1 at 29:17-30:1].

---

[7] *See* [Ex. 2] Brian M. Heberling, *Congressional Gamesmanship Leads To An Acquittal in Deepwater Horizon Case: United States v. David Rainey: A Case Study*,  20 BERKELEY J. CRIM. L. 260, 262 (Fall 2015) (noting the "lessons learned" from the *Rainey* case*,* including (1) there is only one United States when it comes to a criminal prosecution, rendering the consequences of a privilege assertion by Members of Congress attributable to the Executive Branch, (2) a criminal defendant's right to compulsory process cannot be vindicated by voluntary testimony limited in scope by the witness, (3) district courts have power to exclude all congressional evidence if a selective invocation of the Speech or Debate Clause privilege leads to a one-sided, unfair presentation of evidence, and may acquit a defendant if the ruling leads to a failure of proof on an essential element, and (4) given the unpredictability and self-interest of Members of Congress and their staff, and the absolute nature of the Speech or Debate Clause privilege, prosecutors should not pursue a criminal charge that requires congressional testimony if any alternatives are available.).

**All Questions Regarding The Breadth, Specificity, And Timing Of Production
Can Be Resolved Through Accommodation, Or Modification By This Court**

Movants complain because the subpoenas ask them to "please bring the documents with you to the Pretrial Conference scheduled in this matter for **July 14, 2022**" – rather than on the first day of trial four days later, on July 18, 2022. Movants are exaggerating to say that this was "improper." [ECF 1 at 15]. In fact, our approach is consistent with federal practice. Section 275 of Wright and Miller's Federal Practice and Procedure provides the following guidance:

> Leave of court is not ordinarily required for issuance of a subpoena duces tecum, except for a subpoena to a third party for personal or confidential information about a victim. It is discretionary with the court whether to require production prior to trial. Some courts hold that the court's discretion must be invoked by motion in advance if a subpoena is to be made returnable in advance of the trial. This is an orderly and desirable procedure and one frequently followed, but the rule does not require it, and the question can be raised as well on a motion to quash . . .

Wright & Miller, 2 Fed. Prac. & Proc. Crim § 275 (4th ed.); *see also Bowman Dairy Co. v. United States,* 341 U.S, 214, 220 (1951) ("[t]he Court may control the use of Rule 17(c) to that end by its powers to rule on motions to quash or modify."). As a practical matter, both the defense and the Government will want to review Movants' documents before trial. To the extent that any Movant needs that extra four days, we can accommodate. Should this Court want to modify the subpoenas, we have no problem with production on July 18, 2022.

Movants also complain about the breadth of the subpoenas and claim that the subpoenas request documents and materials that are irrelevant to Mr. Bannon's case. Counsel for Mr. Bannon tailored its requests narrowly to capture documents that reflect specific communications by each Movant related to Mr. Bannon, and specific documents that reflect the bias of the Movant against Mr. Bannon. [8] *See Welsh v. United States*, 404 F.2d 414, 417-418 (5th Cir.1968) ("if the accused

---

[8] For example, the subpoena directed to Chairman Thompson seeks information supporting the allegations he made in a lawsuit filed against President Trump, purporting to assess liability for

avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or 'unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous.' ... That test places the burden of showing frivolity or abuse of process on the Government, where it properly belongs.") (quoting *Greenwell v. United States*, 115 U.S. App. D.C. 44 (1963)).

The same response applies to Movant Douglas Letter's contention that he need not produce documents pertaining to his change in position regarding whether the Select Committee has a "ranking minority member." Mr. Letter voluntarily participated in an FBI interview where he stated that the Select Committee had no ranking minority member. He later changed his position and claimed that Representative Liz Cheney is the ranking member on the Select Committee; however, Select Committee Chairman Thompson has explicitly said that Representative Cheney is not the ranking member.[9] The jury in Mr. Bannon's criminal case is entitled to hear evidence on that issue – which is critical to the "authority" element of the offence. If there are specific

---

the events of January 6, 2021, and claiming that he was personally injured by those events. *Thompson v. Trump*, 1:21-cv-00400(APM) (See e.g. Doc. 11-1 Amended Complaint). This hardly seems an appropriate prelude to service as the Chair of a Select Committee tasked with investigating those events. Furthermore, Select Committee Members Raskin and Schiff have each written books that they are currently marketing which assert their conclusions about liability for the events of January 6th, before they even began their purported "investigation" as members of the Select Committee. Subpoenas directed toward them seek to uncover personal, reputational, and financial conflicts of interests for these members, who clearly have a vested interest in ensuring that the Select Committee's conclusions are consistent with the conclusions they have drawn in their books.

[9] YOUTUBE, *Watch: Jan. 6 House Select Committee Holds First Hearing On Capitol Riot* (July 27, 2021), https://www.youtube.com/watch?v=vHrt44ANHIA at 16:37; *see also* ( Kimberly Wehle, *The Case for Subpoenaing Members of Congress to Testify on the January 6 Insurrection: Democrats have strong constitutional arguments on their side*, THE ATLANTIC (Aug. 26, 2021), (Thompson made clear at the opening hearing that Representative Liz Cheney "is not the ranking member," and Adam Kinzinger is the only other Republican on the committee).

documents that are covered by the attorney-client privilege, the proper course is to identify them and determine whether an accommodation can be reached as to those documents, or whether a modification to the subpoena to Mr. Letter should be made to excuse him from producing those documents. But it would be error to quash the subpoena on that basis, or excuse Mr. Letter's appearance as a trial witness on that basis.

As previously emphasized, if any Movant contends that production of documents pertaining to Mr. Bannon is overly burdensome, the remedy is accommodation or modification of that specific subpoena. As expressly communicated to counsel for the U.S. House of Representatives, counsel for Mr. Bannon will work with any Movant to minimize burden.

## Movants Are Not "Too Important" To Testify At Mr. Bannon's Trial

The Movants who are Members of Congress appear to think that a criminal trial is like a constituent event – where they can send a staff member if they believe that they are too busy or too important to attend themselves. There is no authority for that position. Where, as here, Movants each have first-hand knowledge of exculpatory information going to an element of the criminal offense charged, they are not allowed merely to designate an alternate.

Movants argue that, even though they initiated this prosecution, that they are "high-ranking government officials" who are too important and too busy to appear as trial witnesses. *See* [ECF 1 at 33, 38]. But Movants do not cite any authority which immunizes a Member of Congress from testifying at a criminal Contempt of Congress trial where they possess exculpatory information regarding whether the accused was summoned under the authority of the U.S. House of Representatives. Nor have Movants cited any authority for the proposition that a Member of Congress who is a "complainant" in a Contempt of Congress trial can avoid compliance with a trial subpoena because they are too important. The authority relied upon by Movants is

distinguishable. The cases pertain to civil depositions or criminal matters where the officials did

not have first-hand knowledge pertaining to an element of the offense, and did not personally take

steps to initiate the prosecution.[10] We do not dispute that every Member of Congress is important

_____

[10] *See, e.g., Springfield Terminal Ry. Co. v. United Transp. Union*, 1989 WL 225031, at *1-2 (D.D.C. May 18, 1989) (civil case – court refused to compel ranking Minority Member of House Appropriations Committee to testify or produce documents in a dispute over an arbitral award where congressman was only tenuously connected to the issues in the lawsuit, and Plaintiff stonewalled all efforts congressman made to reach a less burdensome accommodation); *Simplex Time Recorder Co, v. Secretary of Labor*, 766 F.2d 575 (1985) (civil case – court refused to compel Department of Labor officials to testify regarding enforcement of the Occupational Safety and Health Act of 1970 where such decisions were discretionary and the information sought was available from other sources); *Bogan v. City of Boston*, 489 F.3d 417 (1st Cir. 2007) (civil case – district court did not abuse its discretion by issuing a protective order in civil rights case to prevent taking of deposition from mayor where other avenues for obtaining the requested information had not been exhausted); *In re U.S. ("Bernanke")*, 542 F. App'x 944 (Fed. Cir. 2013) (civil case – Chairman of Board of Governors of Federal Reserve entitled to protective order preventing his deposition because deposition created risks of disrupting significant ongoing government activities and probing into decision-making process of Federal Reserve without showing of extraordinary circumstances); *Blankenship v. Fox News Network, LLC*, 2020 WL 7234270 (S.D. Va. Dec. 8, 2020)( civil case – granting protective order to prevent deposition of Senators McConnell and Gardner where Plaintiff had not demonstrated Senators personal knowledge of facts at issue, and alternative avenues for securing information had not been exhausted); *Moriah v. Bank of China, Ltd.*, 72 F.Supp.3d 437 (S.D.N.Y. 2014) (civil case –victim of bombing which occurred in Israel and the personal representative of victim who was killed in bombing failed to demonstrate exceptional circumstances allowing deposition of the former House Majority Leader of the House of Representatives, where victim and personal representative could not establish former Leader had unique first-hand knowledge related to any matter in action against Chinese bank relating to bombing); *Feldman v. Bd. of Educ. School Dist. #1 City & Cnty of Denver*, No. 09-CV-01049, 383154 (D. Colo. Jan. 28, 2010) (civil case – granting motion to prevent deposition of Senator where Senator had no first-hand knowledge or participation in the facts at issue); *In re U.S. ("Reno & Holder")*, 197 F.3d 310 (8th Cir. 1999) (defendant sentenced to death was not entitled to subpoenas directing AG and her deputy to testify in decision  not to withdraw death notice; since record contained sufficient evidence to establish factual basis for defendant's claim, testimony of AG and her deputy was not necessary); *Cano v. Davis*, NO. 01-CV-08477 (C.D. Cal. March 28, 2022) (civil case –plaintiffs in California voter redistricting challenge had not adequately alleged that the subpoenaed senators had first-hand knowledge of the state's redistricting plan and that subpoenas should be quashed pending court's ruling on defendant's summary judgment motion as to propriety of discovery on issues of intent); *Lederman v. N.Y.C. Dept. of Parks and Recreation*, 731 F.3d 199 (2d. Cir. 2013) (civil case – district court did not abuse its discretion in issuing protective order barring depositions of Mayor and former Deputy Mayor of New York in suit by visual artists challenging constitutionality of time, place, and manner restrictions on selling art because artists did not demonstrate exceptional circumstances, identify with particularity the

– to someone. But that does not excuse appearance at trial by a Member of Congress or staff who possesses exculpatory information.

The cases that Movants rely upon are aimed at protecting the integrity of the administrative process and at ensuring that high-ranking officials are not dragged into civil lawsuits lawsuit that tangentially implicate their decisions or actions. *See United States v. Morgan*, 313 U.S. 409 (1941); *United States v. Newman*, 531 F. Supp.3d 181, 188 (D.D.C. 2021). That is not the situation in this criminal case. As detailed above, this is a case where the members have been subpoenaed have taken direct actions that resulted in prosecution of Mr. Bannon. In these circumstances, they are not merely high ranking official at the top of the pyramid but instead are, as the Government has stated to the Court, "complainants" in this case. By their actions directed at Mr. Bannon and aimed at subjecting him to criminal prosecution, they have necessarily waived any argument that they are too high ranking or too busy to testify at trial.

### Granting The Motion To Quash Will Require The Exclusion Of All Congressional Evidence At Mr. Bannon's Criminal Trial

If this Court accepts the position of the Movants that they have absolute immunity from subpoena process by a criminal defendant charged with Contempt of Congress under the Speech or Debate Clause, the only way to preserve Mr. Bannon's Fifth and Sixth Amendment rights is to exclude all congressional evidence at trial. In a criminal prosecution, the Government's ultimate

---

information they needed, or contend that Mayor and his Deputy had first-hand knowledge about litigated claims or that relevant information could not be obtained elsewhere); *Bardoff v. United States* , 628 A.2d 86 (D.C. 1993) (civil case – protestors who disrupted Iran-Conta hearing not entitled to subpoena senators and chief counsel to question them concerning conduct of hearing, including decision to adjourn, as subject fell within area of legislative activity protected from being "questioned in any other place" by speech or debate clause); *McNamee v. Mass.*, 2012 WL 1665873 (D. Mass. May 10, 2012) (civil case – granting motion to quash subpoenas directed at congressman and chief of staff in worker's compensation action because plaintiff had not demonstrated that congressman or chief of staff had personal knowledge of facts at issue).

responsibility is to ensure justice is done. *Jencks v. United States*, 353 U.S. 657, 670-71 (1957).  It follows that under the circumstances presented by this Motion To Quash, the Government "can invoke its evidentiary privileges only at the price of letting the defendant go free." *Id.* (citing *United States v. Reynolds*, 345 U.S. 1, 12 (1953)). The Supreme Court has held, for instance, that a criminal action must be dismissed when the government, on the grounds of privilege, elects not to produce documents relevant and material to a government witness's testimony. *Jenks*, 353 U.S. at 657; *Id.* at 670-71 (holding that it is "unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense."); *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) (when disclosure of informer's identity, or of contents of his communication, is relevant and helpful to criminal defendant, or is essential to a fair determination of a cause, the trial court may require disclosure and, if government withholds the information on grounds of privilege, dismiss the action).

In a reversal of position, the same Members of Congress who initiated the prosecution of Mr. Bannon for asserting privilege when served with a subpoena now ask this Court to excuse them from compliance with trial subpoenas based upon their own assertion of privilege. Speaker Pelosi has made incendiary statements about Mr. Bannon that include the phrase – no one is above the law. But it is the Members of Congress and staff who claim to be above compliance with a trial subpoena in the very criminal case they started.

The Fifth and Sixth Amendments guarantee that Mr. Bannon, like every accused, be afforded the opportunity to put on a defense at trial, to confront his accusers in court, and to compel production of evidence in their possession. Permitting Movants to selectively participate in Mr. Bannon's prosecution would eviscerate those essential rights. Simply put, the House cannot have it both ways.

By filing an amicus curiae brief in support of the Government's position in this case, the subpoenaed witnesses have conceded the materiality and relevance of their testimony in Mr. Bannon's case. It would be contrary to fundamental fairness for them to avail themselves to the benefit of being heard by this Court and then hide behind legislative immunity to circumvent the legal and procedural protections afforded to the criminal defendants who come before it.

Dated: June 27, 2022                          Respectfully submitted,

                                              SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

                                              ____/s/ M. Evan Corcoran
                                              M. Evan Corcoran (D.C. Bar No. 440027)
                                              400 East Pratt Street – Suite 900
                                              Baltimore, MD 21202
                                              Telephone: (410) 385-2225
                                              Facsimile: (410) 547-2432
                                              Email: ecorcoran@silvermanthompson.com

                                              ____/s/ David I. Schoen
                                              David I. Schoen (D.C. Bar No. 391408)
                                              David I. Schoen, Attorney at Law
                                              2800 Zelda Road, Suite 100-6
                                              Montgomery, Alabama 36106
                                              Telephone: (334) 395-6611
                                              Facsimile: (917) 591-7586
                                              Email: schoenlawfirm@gmail.com

                                              *Counsel for Defendant Stephen K. Bannon*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of June 2022, a copy of the foregoing Opposition To Motion To Quash was served *via* the Court's CM/ECF system on registered parties and counsel.

_____/s/ M. Evan Corcoran_
M. Evan Corcoran (D.C. Bar No. 440027)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| IN RE NON-PARTY SUBPOENAS | : | |
| | : | Miscellaneous Case No. 22-60 (CJN) |
| | : | |
| | | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | Criminal No. 21-670 (CJN) |
| | : | |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

**<u>ORDER</u>**

Upon consideration of Defendant's Opposition To Motion To Quash, and based upon the entire record in this miscellaneous case, it is **ORDERED** that the Motion to Quash is hereby **DENIED.**

                                                _____
                                                Hon. Carl J. Nichols
                                                *United States District Judge*

Dated: