## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE NON-PARTY SUBPOENAS | Case No. 22-mc-00060-CJN |
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN K. BANNON,<br><br>*Defendant*. | Criminal No. 21-670 (CJN) |

## REPLY IN SUPPORT OF MOTION TO QUASH

DOUGLAS N. LETTER
    *General Counsel*
TODD B. TATELMAN
    *Principal Deputy General Counsel*
ERIC R. COLUMBUS
    *Special Litigation Counsel*
MICHELLE S. KALLEN
    *Special Litigation Counsel*
STACIE M. FAHSEL
    *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

July 5, 2022

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

  I.    The Subpoenas Do Not Comply with Rule 17 .................................................. 3

  II.   Bannon's Individual Arguments Fail ............................................................... 7

      A.  The Speech or Debate Clause Fully Applies ............................................. 7

      B.  The House's Amicus Brief Was No Waiver ........................................... 12

      C.  Bannon Has Not Met His Burden to Refute the High-Ranking Official Doctrine ... 14

      D.  The General Counsel of the House of Representatives is not a Proper Witness ...... 16

  III.  The Witnesses from the Select Committee Staff Can Address Any Relevant Information Necessary for Bannon's Defense ..................................................................... 19

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Bardoff v. United States*,
  628 A.2d 86 (D.C. 1993) ...................................................................................16

*Barry v. United States ex rel. Cunningham*,
  279 U.S. 597 (1929) .........................................................................................19

*Bowman Dairy Co. v. United States*,
  341 U.S. 214 (1951) ...........................................................................................4

*Budowich v. Pelosi*,
  2022 WL 2274359 (D.D.C.) ...........................................................................8, 12

*Comm. on Judiciary of U.S. House of Representatives v. McGahn*,
  968 F.3d 755 (D.C. Cir. 2020) ........................................................................22

*Dep't of Army v. Fed. Lab. Rels. Auth.*,
  56 F.3d 273 (D.C. Cir. 1995) ..........................................................................13

*Doe v. McMillan*,
  412 U.S. 306 (1973) ...........................................................................................8

*District of Columbia v. Hayes, Jr.*,
  2007-CDC-15462 (D.C. Super. Ct.) .................................................................16

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) ..................................................................................7, 8, 10

*Eastman v. Thompson*,
  2022 WL 1407965 (C.D. Cal.) .........................................................................17

*Hettinga v. United States*,
  677 F.3d 471 (D.C. Cir. 2012) .........................................................................21

*In re Est. of Ferdinand Marcos Hum. Rts. Litig.*,
  94 F.3d 539 (9th Cir. 1996) .............................................................................12

*In re Grabis*,
  2018 WL 1508754 (Bankr. S.D.N.Y.) ..............................................................12

*In re U.S. ("Kessler")*,
  985 F.2d 510 (11th Cir. 1993) .........................................................................15

*In re U.S. ("Reno & Holder")*,
   197 F.3d 310 (8th Cir. 1999) ...........................................................................16

*Irwin v. Veterans Affairs*,
   498 U.S. 89 (1990) ...........................................................................................13

*Jamul Action Comm. v. Stevens*,
   2014 WL 3853148 (E.D. Cal.) ..........................................................................12

*Ky. Dep't of Corr. v. Thompson*,
   490 U.S. 454 (1989) ..........................................................................................21

*McCarthy v. Pelosi*,
   480 F. Supp. 3d 28 (D.D.C. 2020) ......................................................................8

*McSurely v. McClellan*,
   553 F.2d 1277 (D.C. Cir. 1976) .....................................................................9, 10

*Olim v. Wakinekona*,
   461 U.S. 238 (1983) ..........................................................................................21

*Rangel v. Boehner*,
   785 F.3d 19 (D.C. Cir. 2015) ...........................................................................7, 8

*Republican Nat'l Comm. ("RNC") v. Pelosi*,
   2022 WL 1294509 (D.D.C.) ...............................................................8, 9, 17, 19

*Senate Permanent Subcomm. on Investigations v. Ferrer*
   856 F.3d 1080 (D.C. Cir. 2017) .........................................................................12

*Simplex Time Recorder Co. v. Sec'y of Lab.*,
   766 F.2d 575 (D.C. Cir. 1985) ...........................................................................15

*Sparf v. United States*,
   156 U.S. 51 (1895) ............................................................................................14

*Tenney v. Brandhove*,
   341 U.S. 367 (1951) .......................................................................................2, 10

*Trump v. Thompson*,
   20 F.4th 10 (D.C. Cir. 2021) ....................................................................9, 14, 21

*Trump v. Mazars USA, LLP*,
   140 S. Ct. 2019 (2020) .........................................................................................9

*United States v. Arthur Andersen, LLP,*
  Crim. No. H-02-121 (S.D. Tex.) ................................................................15

*United States v. Bannon,*
  No. 21-670 (D.D.C.)..........................................9, 13, 14, 17, 18, 19, 20, 21, 22

*United States v. Binh Tang Vo,*
  78 F. Supp. 3d 171 (D.D.C. 2015)...................................................4, 6

*United States v. Cuthbertson,*
  651 F.2d 189 (3d Cir. 1981) ...........................................................6

*United States v. Ehrlichman,*
  389 F. Supp. 95 (D.D.C. 1974) ......................................................16

*United States v. Ferguson,*
  37 F.R.D. 6 (D.D.C. 1965) .............................................................3

*United States v. Finn,*
  919 F. Supp. 1305 (D. Minn. 1995) ................................................6

*United States v. Gaudin,*
  515 U.S. 506 (1995) .......................................................................14

*United States v. Helstoski,*
  442 U.S. 477 (1979) .......................................................................13

*United States v. Johnson,*
  383 U.S. 169 (1966) .........................................................................7

*United States v. Libby,*
  432 F. Supp. 2d 26 (D.D.C. 2006)...............................................4, 5

*United States v. Morgan,*
  313 U.S. 409 (1941) ................................................................14, 15

*United States v. Moussaoui,*
  Crim. No. 01-455-A (E.D. Va.) ......................................................15

*United States v. Mullins,*
  2013 WL 3506547 (N.D. Ill.) ..........................................................6

*United States v. Nixon,*
  418 U.S. 683 (1974) ....................................................................5, 6

*United States v. North*,
713 F. Supp. 1448 (D.D.C. 1989)...................................................................15

*United States v. Rainey*,
No. 12-291 (E.D. La.).....................................................................................11

*United States v. Rostenkowski*,
59 F.3d 1291 (D.C. Cir.).................................................................................17

*United States v. Shanahan*,
252 F.R.D. 536 (E.D. Mo. 2008)......................................................................6

*United States v. Wittig*,
250 F.R.D. 548 (D. Kan. 2008) ........................................................................6

**Statutes**

2 U.S.C. § 192 .............................................................................. 10, 11, 15

**Rules**

Fed. R. Crim. P. 16 ............................................................................... 3

Fed. R. Crim. P. 17 ............................................................................... 3

Fed. R. Evid. 602 ................................................................................. 23

**Legislative Authorities**

H. Res. 503, 117th Cong. (2021) ................................................................. 19

H. Res. 730, 117th Cong. (2021) ................................................................. 19

Rule II, Rules of the U.S. House of Representatives, 117th Cong. (2021) ................................. 13

**Other Sources**

CNN, *"Misdemeanor from hell": Watch Bannon speak out after he's released*,
YouTube (Nov. 15, 2021),
https://perma.cc/5SN8-N3DA ...........................................................................1

Jose Pagliery, *Steve Bannon Digs Into Roger Clemens' Playbook to Try to Beat Congress*,
The Daily Beast (June 13, 2022),
https://perma.cc/GC2S-VL8L ...........................................................................7

Kyle Cheney, *Judge rejects Bannon's effort to dismiss criminal case for defying Jan. 6 select committee*, POLITICO (June 5, 2022), https://perma.cc/3SPG-VZLN ...............................................................................................1

2 Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Crim § 275 (4th ed. 2022).............. 4

## **INTRODUCTION**

At a press conference in front of the courthouse after Defendant Bannon's initial appearance in this case, Bannon's counsel said of the Select Committee, "this thing was a scam from the beginning."[1]  Bannon himself declared, "I'm telling you right now, this is going to be the misdemeanor from hell," and that "[w]e're tired of playing defense, we're going to go on the offense on this . . . stand by."[2]  On June 15, 2022, at another courthouse press conference following a motions hearing before this Court, Bannon expressed interest in turning his trial into a political spectacle, referring to Members of Congress using derogatory nicknames, and saying: "I look forward to having Nancy Pelosi, and little Jamie Raskin, and shifty Schiff in here in trial answering questions under my . . . tough" lawyers.[3]

The criminal trial subpoenas issued by Bannon to the Speaker of the House, two other House leaders, the Chairman and all the Members of the January 6th Select Committee, the House General Counsel, and Select Committee staffers are apparently part of Bannon's strategy to turn this trial into political theater.  But those subpoenas should be quashed for several reasons:  *First*, Bannon has not identified any information sought by the subpoenas necessary to his defense.  His efforts to challenge the Select Committee's authority address legal, not factual, disputes.  *Second*, any evidence legally relevant and necessary to his defense can be competently addressed by Select Committee employees Kristin Amerling (Chief Counsel and Deputy Staff

---

[1] CNN, *"Misdemeanor from hell": Watch Bannon speak out after he's released*, YouTube, at 01:18-01:20 (Nov. 15, 2021), https://perma.cc/5SN8-N3DA (last viewed July 5, 2022).

[2] *Bannon says "we're taking down the Biden regime" ahead of first court appearance*, Irish Central (Nov. 16, 2021), https://perma.cc/J58D-6LKG.

[3] Kyle Cheney, *Judge rejects Bannon's effort to dismiss criminal case for defying Jan. 6 select committee*, POLITICO, at 00:02-00:13 (June 15, 2022), https://perma.cc/3SPG-VZLN (last viewed July 5, 2022).

Director) and Sean Tonolli (Senior Investigative Counsel), whom the Select Committee has made clear will be made available to testify at trial. Quashing the subpoenas, therefore, deprives Bannon of no evidence necessary to his defense.

Moreover, there is a gaping flaw in one of the central themes that Bannon sounds in his opposition to the House motion to quash: Bannon falsely equates the House Members' attempt to litigate the validity of their subpoenas with his own unilateral decision to defy a Congressional subpoena. There is no unfairness in permitting the House Members to raise valid legal defenses like any other litigant would. To the contrary, fairness would point in the opposite direction. Bannon should not be permitted to use this opportunity to compel testimony from sitting Members of Congress and Members of a time- and security-sensitive investigation into a violent attack on the Capitol complex when he himself stands accused of failing to comply with his own subpoena for information about that subject.

In any event, Bannon fails to recognize that he, unlike the House Members (and their staff), has no valid constitutional or other ground empowering him to entirely disregard the Committee's subpoena. Indeed, this Court has already found that Bannon lacked a clear legal basis to unilaterally defy his subpoena. By contrast, the plain text of the Constitution establishes that Members of Congress and their staff have immunity from questioning outside of Congress for their legislative activities. This immunity is a central feature of our democracy because it prevents both the Executive and Judicial Branches from interfering with Members of Congress (and their officers and staff) as they carry out their legislative responsibilities. *Accord Tenney v. Brandhove*, 341 U.S. 367, 378 (1951) ("In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies." (footnote omitted)). Bannon committed a criminal offense by

defying the Select Committee's subpoena to him, but he has no legally valid ground to compel

the Speaker and other House Members (and their staff) to comply with criminal trial subpoenas

that he has issued in an impermissible and transparent attempt to turn his trial into a political

circus.

## ARGUMENT

For the reasons explained in our Motion to Quash, that motion should be granted.  None

of the arguments in Bannon's response are logically or legally compelling.  For example, nothing

in Bannon's opposition brief cures his subpoenas' failure to comply with Federal Rule of

Criminal Procedure 17(c).  And, Speech or Debate Clause immunity applies, and none of the

House officers or officials whom Bannon has summoned to his trial have actually waived their

immunity.  Finally, any relevant factual testimony necessary for Bannon's defense could be

elicited from the Select Committee staff members who will be made available to testify.

### I.    The Subpoenas Do Not Comply with Rule 17

"The only discovery and inspection permitted in a criminal case is that provided by Rule

16, and it is of a very limited nature."  *United States v. Ferguson*, 37 F.R.D. 6, 7 (D.D.C. 1965).

That rule entitles a defendant "to inspect and to copy or photograph books, papers, documents,

data, photographs, tangible objects, buildings or places, or copies or portions of any of these

items," provided that "the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense; (ii) the government intends to use the item in its

case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."  Fed. R.

Crim. P. 16(a)(1)(E).  Because Rule 16 only imposes an obligation on the government to turn

over documents and objects, Rule 17 allows criminal defendants to order third-party "witness[es]

to produce any books, papers, documents, data, or other objects the subpoena designates," so

long as "compliance would [not] be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(1)-(2).

"It was not," however, "intended by Rule 16 to give a limited right of discovery, and then by
Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy Co. v. United States*,
341 U.S. 214, 220 (1951).  We established in our opening brief that Bannon's subpoenas do not
meet the basic requirements of Rule 17.

First, we pointed to the established rule in this district that "Rule 17 provides a limited
grant of authority, mentioning pretrial production *only in connection with court approval*."
*United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 178 (D.D.C. 2015) (emphasis added).
Bannon claims that "Movants are exaggerating to say that" his failure to obtain court approval
"was 'improper.'"  Opp. to Mot. to Quash ("MTQ Opp.") at 15, ECF 7 (citing 2 Charles Alan
Wright & Arthur Miller, Fed. Prac. & Proc. Crim § 275 (4th ed. 2022)).  Bannon's contention is
belied though by the plain language of *Binh Tang Vo*, which permits pretrial production "only in
connection with court approval."  *Binh Tang Vo*, 78 F. Supp. 3d at 178.[4]  Bannon's effort to
impose an alternative schedule of production in his brief does not negate his failure to obtain the
necessary court approval under Rule 17.  The requirement for court approval is not just a
technicality; it is a crucial step in ensuring that a trial subpoena—which is "issued by a court,"
that bears a court's seal, and is backed by the threat of court-imposed sanctions for non-
compliance," *id.* at 180—is not used for improper purposes (such as broad discovery or a fishing
expedition).

Second, we established that Bannon's subpoenas do not meet Rule 17's specificity and
reasonableness requirements, are too broad, and seek testimony and documents irrelevant to the
issues at trial.  *See* Mot. to Quash ("MTQ") at 16-23, ECF 1.  "[T]o compel production of

---

[4] And Wright & Miller itself makes clear that "[l]eave is required for a pre-trial subpoena duces
tecum."  *See* Wright & Miller, *supra* at 4.

documents under Rule 17(c), the party seeking production 'must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity.'" *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting *United States v. Nixon*, 418 U.S. 683, 700 (1974)). "A subpoena that fails to satisfy these three requirements will be deemed unreasonable or oppressive and must be either quashed or modified." *Id.*

Bannon fails to even acknowledge this standard, let alone meet it. Instead, he summarily asserts that "Counsel for Mr. Bannon tailored its requests narrowly to capture documents that reflect specific communications by each Movant related to Mr. Bannon, and specific documents that reflect the bias of the Movant against Mr. Bannon." ECF 7, MTQ Opp. at 15. That contention is negated by the face of the requests, which seek, among other things:

- "*All documents* . . . regarding the establishment of the January 6th Select Committee"

- "*All documents* . . . regarding the factors to be considered in determining whether to bring a civil or criminal action or other sanction for an alleged failure to comply with a Congressional subpoena, involving Mr. Bannon or any other individual"

- "*All documents* in your possession which tend to show a conflict of interest involving any Select Committee member or staff (including but not limited to documents that pertain to payments for a book that was written by and/or promoted by any Select Committee member or staff from January 6, 2021, up until the present date)"

ECF 1, MTQ, Exs. A-P (emphases added). This is precisely the sort of "fishing expedition" prohibited by Rule 17, *see Nixon*, 418 U.S. at 699-700, not the particularized demands for evidentiary material contemplated by Rule 17(c). *See also Libby*, 432 F. Supp. 2d at 31 ("[I]f the [subpoenaing] party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." (internal citation omitted)).

Bannon further summarily asserts that "each Movant has first-hand knowledge that is exculpatory" as to whether "the Select Committee issued its subpoena without lawful authority"

and on Bannon's "request for an accommodation (a one-week extension)."  ECF 7, MTQ Opp. at

12.[5]  These conclusory representations do not meet Rule 17's standard.[6]  In sharp contrast to the

subpoenas here, the subpoena at issue in *Nixon* "precisely identified meetings between the

President and others" and the Special Prosecutor identified the "time, place, and persons present"

at discussions.  *Nixon*, 418 U.S. at 688.  Because Bannon falls far short of carrying his burden

under *Nixon*, the productions demanded by the subpoenas are clearly "unreasonable" and

"oppressive."  *Id.* at 698.

       Bannon's sweeping subpoenas exemplify why court approval is required before issuing

third-party subpoenas seeking pre-trial documents under Rule 17.  Without court supervision of

subpoenas, "Rule 17(c) would lend itself to discovery of the broadest sort"—the sort Bannon

demands here—"a result that the drafters of the Rule decried."  *Binh Tang Vo*, 78 F. Supp. 3d at

179 (quoting *United States v. Finn*, 919 F. Supp. 1305, 1329 (D. Minn. 1995)).

---

[5]  "[N]aked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule."  *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981).

[6] *See United States v. Wittig*, 250 F.R.D. 548, 552 (D. Kan. 2008) ("The specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents. . . . [The rule] demand[s] more than the title of a document and conjecture concerning its contents." (quotation marks and footnotes omitted)); *see also United States v. Shanahan*, 252 F.R.D. 536, 541 (E.D. Mo. 2008) ("As a general rule, requests for 'any and all documents' are emblematic of a discovery request or of a fishing expedition." (citation omitted)); *United States v. Mullins*, No. 12-596, 2013 WL 3506547, at *2, *4 (N.D. Ill. July 11, 2013) (quashing defense subpoena seeking "[a]ll notes, emails, interview reports, audio interviews, memoranda, reflections, and investigatory reports associated with 24-9 contracts investigations involving [the defendant]" because defendant "simply list[ed] broad categories of documents without specifying particular documents," "[h]is mere speculation about the existence of possibly relevant documents [wa]s not sufficient to justify his subpoenas," and he "failed to tailor his subpoenas to materials related to the contracts at issue in his case").

II.      **Bannon's Individual Arguments Fail**

Bannon asserts four flawed legal arguments in his opposition: (1) the Speech or Debate Clause does not apply; (2) because the House of Representatives filed an amicus brief in this prosecution, Speaker Pelosi, Majority Leader Hoyer, and Majority Whip Clyburn waived their immunity; (3) the "high-ranking official" doctrine does not apply; and (4) the General Counsel of the House of Representatives is a viable fact witness.  None of these arguments justify denying the motion to quash.

### A.  The Speech or Debate Clause Fully Applies

"Since the Glorious Revolution in Britain, and throughout United States history, the [Speech or Debate] privilege has been recognized as an important protection of the independence and integrity of the legislature."  *United States v. Johnson*, 383 U.S. 169, 178 (1966).  "In the American governmental structure the clause serves the additional function of reinforcing the separation of powers so deliberately established by the Founders."  *Id.*  The Supreme Court has, therefore, "[w]ithout exception, . . . read the Speech or Debate Clause broadly to effectuate its purposes."  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975); *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015).

Despite numerous Supreme Court and D.C. Circuit precedents to the contrary, Bannon insists that the Speech or Debate Clause does not apply here.[7]  He posits three reasons: (1) Speech or Debate immunity does not apply to alleged constitutional violations; (2) Members'

---

[7] In a recent article, Bannon's counsel "readily admitted that the House of Representatives and the Jan. 6 Committee would be right to try to hold them back under the U.S. Constitution's 'speech and debate clause.'"  Jose Pagliery, *Steve Bannon Digs Into Roger Clemens' Playbook to Try to Beat Congress*, The Daily Beast (June 13, 2022), https://perma.cc/GC2S-VL8L.

motives are relevant to Bannon's defense; and (3) the Speech or Debate Clause does not apply to criminal proceedings that arise from a contempt of Congress referral.

1.  Bannon argues, "[w]here – as here – actions by a Member of Congress or staff infringe upon the constitutional rights of a citizen, their acts are not protected by the Speech or Debate Clause."  ECF 7, MTQ Opp. at 12.  "This 'familiar' argument—made in almost every Speech or Debate Clause case—has been rejected time and again," *Rangel*, 785 F.3d at 24 (citation omitted), by the D.C. Circuit, the Supreme Court, and district courts in this jurisdiction. As the D.C. Circuit explained, "[a]n act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, . . . or even the Constitution." *Id.* (internal quotation marks omitted).  And the Supreme Court reasoned that an approach permitting courts to disregard the Speech or Debate Clause because a person alleges a constitutional violation "ignores the absolute nature of the speech or debate protection and [Supreme Court] cases which have broadly construed that protection." *Eastland*, 421 U.S. at 509-10; *see also Doe v. McMillan*, 412 U.S. 306, 312-13 (1973) (Speech or Debate Clause applies to all "actions within the 'legislative sphere,' . . . even though the[] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes" (internal citation omitted)); *McCarthy v. Pelosi*, 480 F. Supp. 3d 28, 37-39 (D.D.C. 2020), *aff'd*, 5 F.4th 34 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 897 (2022) (Speech or Debate immunity barred constitutional claims).

As recently as last month, courts have dismissed on Speech or Debate grounds constitutional challenges to the Select Committee's subpoenas.  *See Budowich v. Pelosi*, No. 21-3366, 2022 WL 2274359, at *6 (D.D.C. June 23, 2022) (Speech or Debate immunity applied notwithstanding Fifth, Fourth, and First Amendment claims); *Republican Nat'l Comm. ("RNC")*

*v. Pelosi*, No. 22-659, 2022 WL 1294509, at *8 (D.D.C. May 1, 2022) (Speech or Debate

immunity applied notwithstanding Fourth and First Amendment claims), *appeal pending*, No.

22-5123 (D.C. Cir.).

Bannon's cites only *McSurely v. McClellan*, 553 F.2d 1277 (D.C. Cir. 1976) to support

his assertion that Speech or Debate immunity does not protect against constitutional claims.

That case, however, held that Speech or Debate immunity did not apply to certain acts because

those specific acts did not pertain to a subject "on which legislation could be had." *See id.* at

1296 ("The fact that [the investigator] took and transported *concededly extraneous material* and

it is significant that he seized 'some personal letters' takes this case outside the protection of

legislative immunity." (emphasis added)).  Any suggestion that the subpoena issued to Bannon

does not pertain to a subject on which legislation could be had, is simply false.  The D.C. Circuit

has already held that "the January 6th Committee plainly has a 'valid legislative purpose' and its

inquiry 'concern[s] a subject on which legislation could be had.'"  *Trump v. Thompson*, 20 F.4th

10, 41 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 1350 (2022) (quoting *Trump v. Mazars USA,

LLP*, 140 S. Ct. 2019, 2030-31 (2020)).  And the subpoena issued to Bannon is important to the

Select Committee's investigation.  Bannon played a key role predicting and encouraging the

attack on January 6.  *See* U.S. House of Representatives' Br. at 11-12, *United States v. Bannon*,

No. 21-670 (D.D.C. June 24, 2022), ECF 76-2.

2.  Bannon next accuses the Select Committee of bad motives for issuing him a subpoena

and suggests that Speech or Debate immunity should, therefore, not apply.  *See* ECF 7, MTQ

Opp. at 20 ("Speaker Pelosi has made incendiary statements about Mr. Bannon that include the

phrase – no one is above the law."); *id.* at 7 (accusing the Select Committee Members of "bias

against Mr. Bannon").  Even the case on which Bannon principally relies for his Speech or

Debate argument recognizes the idea that allegations of bad motive cannot so easily extinguish Speech or Debate immunity.  *See McSurely*, 553 F.2d at 1295 (Wilkey, J., dissenting) ("In the usual case if the activity is arguably within the 'legitimate legislative sphere' the Speech or Debate Clause bars inquiry even in the face of a claim of 'unworthy motive.'"); ECF 7, MTQ Opp. at 12 (citing *McSurely*, 553 F.2d at 1288).

Supreme Court rulings have long "ma[d]e clear that in determining the legitimacy of a congressional act [courts] do not look to the motives alleged to have prompted it" because, even if true, "the claim of an unworthy purpose does not destroy the privilege." *Eastland*, 421 U.S. at 508-09 (citation omitted).  "In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed.  Courts are not the place for such controversies." *Tenney*, 341 U.S. at 378 (footnote omitted).  When considering Speech or Debate immunity "[t]he courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province." *Id.*  The Speech or Debate "privilege would be of little value if" Bannon could subject the subpoena recipients here "to the cost and inconvenience and distractions of a trial . . . based upon a jury's speculation as to motives." *Id.* at 377.  Bannon's effort to invoke the alleged motives of the subpoena recipients is plainly barred by the Speech or Debate Clause.

3.  Bannon insists that "[b]ecause Movants set in motion the prosecution of Mr. Bannon, they cannot now retreat behind the Speech or Debate Clause."  ECF 7, MTQ Opp. at 3.  The Constitution provides no "contempt prosecution exception" to Speech or Debate immunity.  Moreover, to say that Members of Congress "set in motion" a prosecution under 2 U.S.C. § 192 ignores Bannon's personal role in defying his subpoena, the Department of Justice's role in bringing the charges, and the grand jury's role in issuing Bannon's indictment.  The United

States, represented by the Department of Justice, "sets in motion" a contempt case under 2 U.S.C. § 192; neither Congress nor the Members who vote in favor of a contempt referral are the prosecutors.

Bannon's argument is, in any event, far too sweeping.  Under Bannon's theory of criminal contempt, a defendant must be entitled to call any Member of Congress (or their staff) involved in considering a contempt referral, lest Congressional evidence be excluded, or the entire prosecution be dismissed.  *See* ECF 7, MTQ Opp. at 19-23.  Accepting Bannon's approach to 2 U.S.C. § 192 would fatally undermine the statute.

This is but one of various reasons that Bannon's reliance on *United States v. Rainey*, No. 12-291, is misplaced.  *See* ECF 7, MTQ Opp. at 14.  That decision (unpublished and issued orally) from the Eastern District of Louisiana was wrongly decided and is not binding on this Court.  *Rainey* is also materially different.  In *Rainey*, the court "f[ound] that the evidence sought by the defendant through documentary production and testimony [wa]s highly relevant to his defense and material to the issues before the Court for the jury's consideration."  MTQ Opp., Ex. 1, Rainey Jury Trial Tr. at 283:22-25, ECF 7-1.  Here, Bannon has not established that the more than twenty sweeping categories of materials he sought in the sixteen subpoenas, or that testimony from these witnesses, are "essential" to his defense.  And here, we have identified two witnesses who are available to testify (on both direct and cross-examination) to any factual issues this Court concludes are essential to Bannon's defense.  *See infra* at 19-24.

In practice, Bannon's approach would make conviction at trial for a violation of 2 U.S.C. § 192 contingent on Members and their staff  subjecting themselves to trial and document production—an intrusion that the Speech or Debate Clause of the Constitution was designed to prevent.  The Speech or Debate Clause applies here and requires quashing the subpoenas.

11

**B.  The House's Amicus Brief Was No Waiver**

Bannon argues that Speaker Pelosi, Majority Leader Hoyer, and Majority Whip Clyburn waived Speech or Debate immunity by filing an amicus brief in Bannon's criminal case.  *See* ECF 7, MTQ Opp. at 2.  Bannon cites no authority for his theory that Members of Congress waive Speech or Debate immunity (such that they must testify at a criminal trial) simply by submitting an amicus brief.  *See id.*  To the contrary, courts have specifically rejected arguments that the mere submission of an amicus brief waives immunity.  *See In re Est. of Ferdinand Marcos Hum. Rts. Litig.*, 94 F.3d 539, 547 (9th Cir. 1996) ("Submission of the [amicus] brief does not constitute an implied waiver of immunity."); *In re Grabis*, No. 13-10669, 2018 WL 1508754, at *8 (Bankr. S.D.N.Y. Mar. 26, 2018) ("[i]n submitting its amicus curiae brief" in a similar case, Department of Education "did not waive its sovereign immunity"); *Jamul Action Comm. v. Stevens*, No. 13-CV-01920, 2014 WL 3853148, at *9 (E.D. Cal. Aug. 5, 2014) (rejecting argument that tribe waived sovereign immunity because it filed an amicus brief).

Furthermore, no court has ever held that Speech or Debate Clause immunity is waivable. *Accord Budowich*, 2022 WL 2274359, at *7 ("the Court is not aware of one" case "holding that the [Speech or Debate] Clause's immunity may be waived").  A Congressional entity may choose not to assert its Speech or Debate immunity in a given case, but that is far different from saying that Members of Congress have implicitly waived their immunity as to an entire category of litigation or as to all potential invocations of the immunity in that case.  *See Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1087 (D.C. Cir. 2017) (rejecting argument that by "seeking to enlist the judiciary's assistance in enforcing its subpoena," the Senate subcommittee had "necessarily accepted an implicit restriction on the Speech or Debate Clause").  Even "[a]ssuming" for the sake of argument that waiver of the immunity provided by the Speech or Debate Clause is "possible," the Supreme Court has made clear that such waiver

12

"can be found only after explicit and unequivocal renunciation of the protection." *United States v. Helstoski*, 442 U.S. 477, 490-91 (1979); *id.* at 491 ("The ordinary rules for determining the appropriate standard of waiver do not apply in this setting."). The mere filing of an amicus brief is not an "explicit and unequivocal renunciation" of Speech or Debate immunity. *Cf. Dep't of Army v. Fed. Lab. Rels. Auth.*, 56 F.3d 273, 277 (D.C. Cir. 1995) ("In order to waive sovereign immunity, the Congress must 'unequivocally express[]' its desire to do so. *Irwin v. Veterans Affairs*, 498 U.S. 89, 95 (1990). This expression must appear on the face of the statute; it cannot be discerned in (lest it be concocted out of) legislative history.").

In any event, the amicus brief in Bannon's criminal case was not filed on behalf of Speaker Pelosi, Majority Leader Hoyer, or Majority Whip Clyburn. It was filed on behalf of the House of Representatives as an institution. *See* ECF 76-2, U.S. House of Representatives's Br. at 1, *Bannon* ("*The United States House of Representatives* files this amicus curiae brief in support of the position of the U.S. Department of Justice . . ." (emphasis added)). While the Speaker directed the filing of the amicus brief, after the United States House of Representatives' Bipartisan Legal Advisory Group ("BLAG")[8] authorized it, the brief "sp[oke] for, and articulate[d] *the institutional position of the House*." Rule II.8(b), Rules of the U.S. House of Representatives, 117th Cong. (2021) (emphasis added).[9] The filing of an amicus brief on behalf

---

[8] The BLAG consists of the Speaker, Majority Leader, Majority Whip, Minority Leader, and Minority Whip.

[9] The House of Representatives' brief stands in contrast to the amicus brief by Minority Leader McCarthy and Minority Whip Scalise, which was on behalf of these Members individually. *See* Mot. for Leave to File Amicus Curiae Br., *United States v. Bannon*, No. 21-670 (D.D.C. May 24, 2022), ECF 75; *see also* Tr. of Mot. Hr'g at 20:2-13, *United States v. Bannon*, No. 21-670 (June 15, 2022) ("THE COURT: In your view, is that amicus brief from the minority or is it just from two members of the minority? MR. CORCORAN: It's from the minority whip and the minority leader, so two members. THE COURT: Well, I don't know whether the minority party can act as an entity. MR. CORCORAN: Absolutely. THE COURT: I don't think it matters but for nomenclature purposes it is styled as a brief from two people. MR. CORCORAN: Absolutely.").

of the House of Representatives did not constitute waiver of Speech or Debate immunity on behalf of Speaker Pelosi, Majority Leader Hoyer, Majority Whip Clyburn, or anyone else.

### C.  Bannon Has Not Met His Burden to Refute the High-Ranking Official Doctrine

Bannon does not dispute that Members of Congress and their staff are high-ranking government officials as set forth in *United States v. Morgan*, 313 U.S. 409, 422 (1941).  Instead, he claims that this longstanding principle should not apply because the sixteen subpoena recipients "possess exculpatory information regarding whether the accused was summoned under the authority of the U.S. House of Representatives."  ECF 7, MTQ Opp. at 17.[10]

As an initial matter, the question of whether the Select Committee possessed authority to issue the subpoena to Bannon is not a factual question subject to witness testimony before a jury. As the Justice Department has pointed out, the scope of Congress's and the Select Committee's authority is a question of law.  *See* Mot. in Limine at 11-14 *United States v. Bannon*, No. 21-670 (D.D.C. June 17, 2022), ECF 85.  And the jury in a criminal case does not have the power to decide "pure questions of law."  *United States v. Gaudin*, 515 U.S. 506, 513 (1995) (emphasis omitted) (discussing *Sparf v. United States*, 156 U.S. 51, 105-06 (1895)).  As the United States rightly points out "[s]ubmitting the question of the meaning of House rules to the jury would risk allowing the judicial branch to conclude the House rules have a meaning different from that given them by the House, a violation of the Rulemaking Clause."  ECF 85, Mot. in Limine at 13, *Bannon* (June 17, 2022).  Indeed, the D.C. Circuit has already held as a matter of law that the Select Committee has a valid legislative purpose.  *See Trump v. Thompson*, 20 F.4th at 41-42.

---

[10] The sheer number of the subpoenas undermines Bannon's purported need.  Half a day of testimony from each of the subpoenaed witnesses would take up nearly the entirety of a two-week trial.

The information Bannon seeks, therefore, is not factual information essential to his case. *See United States v. North*, 713 F. Supp. 1448, 1449 (D.D.C. 1989).

But, even if Bannon somehow did identify some question of fact appropriate for testimony, he falls far short of establishing the "extraordinary" or "exceptional" circumstances to justify the sixteen subpoenas he issued and showing that the information cannot be obtained elsewhere. *See Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586-87 (D.C. Cir. 1985). Bannon has not shown that each of the subpoena recipients has unique factual information essential to his case that Ms. Amerling or Mr. Tonolli cannot provide.

Bannon attempts to distinguish the case law we cited applying *Morgan*'s "high-ranking official" test by claiming that "[t]he cases pertain to civil depositions or criminal matters where the officials did not have first-hand knowledge pertaining to an element of the offense, and did not personally take steps to initiate the prosecution." ECF 7, MTQ Opp. at 18. Voting in favor of a contempt referral, however, is not "personally tak[ing] steps to initiate" a prosecution under 2 U.S.C. § 192. Contrary to Bannon's suggestion, courts have not hesitated to quash subpoenas directed to Members or other high-ranking officials by defendants in criminal cases. *See, e.g.*, Order at 5, *United States v. Moussaoui*, Crim. No. 01-455-A (E.D. Va. Mar. 2, 2006) (quashing document subpoena directed to House Member in capital prosecution), attached as Ex. A; Order, *United States v. Arthur Andersen, LLP*, Crim. No. H-02-121 (S.D. Tex. May 14, 2002) (quashing document subpoena directed to House Committee on Energy and Commerce in criminal case arising out of Enron scandal), attached as Ex. B; *In re U.S. ("Kessler")*, 985 F.2d 510, 511-13 (11th Cir. 1993) (quashing criminal defendants' subpoena seeking to compel testimony of FDA commissioner in support of motion to dismiss indictment on ground of selective prosecution). This is true even in cases where Members of Congress or other important officials have first-

15

hand knowledge of information surrounding the prosecution.  *See In re U.S. ("Reno & Holder")*, 197 F.3d 310, 310 (8th Cir. 1999) (granting petition for writ of mandamus when district court denied motion to quash subpoenas directing United States Attorney General and her deputy to testify in connection with decision declining to withdraw death notice in federal prosecution (and Deputy Attorney General himself convened and met with members of death penalty committee in deciding not to withdraw death notice)).[11]

### D.  The General Counsel of the House of Representatives is Not a Proper Witness

Bannon does not dispute that the work of the General Counsel of the House of Representatives to draft and file an amicus brief in the criminal case is privileged.  Bannon, however, insists that his focus is on the General Counsel's "change in position regarding whether the Select Committee has a 'ranking minority member.'"  ECF 7, MTQ Opp. at 16.

Although various subpoena recipients in the Select Committee's investigation have asserted this argument, no court has adopted it.  To the contrary, Judge Kelly recently held, "to the extent there is any uncertainty about whether [Representative Cheney] fits the bill" as the ranking minority member, "on this record the Court must defer to the Select Committee's decision to treat Representative Cheney as the ranking minority member for consultation

---

[11] *See also, e.g.*, *Bardoff v. United States*, 628 A.2d 86, 90 (D.C. 1993) (affirming conviction, in connection with defendants' disruption of Congressional hearing, where trial court quashed testimonial subpoenas to Senators and Senate Committee counsel; relying, in part, on defendants' "fail[ure] to proffer any reason why others present who did not hold such high office could not provide the testimony"); Order Granting Mot. to Quash Subpoena on U.S. Rep. Maxine Waters at 3, *District of Columbia v. Hayes, Jr.*, No. 2007-CDC-15462 (D.C. Super. Ct. Nov. 16, 2007) (in context of criminal trial of individual accused of disrupting Member's office, quashing subpoena to Member, who had witnessed those events, where other individuals also had witnessed relevant events; "Based on the Congresswoman's briefs, there were others present who saw and heard the defendants' actions and who could testify to them"), attached as Ex. C; *United States v. Ehrlichman*, 389 F. Supp. 95, 97-98 (D.D.C. 1974), *aff'd*, 546 F.2d 910 (D.C. Cir. 1976) (perjury prosecution wherein Speech or Debate Clause prohibited court from forcing the chairman of the Subcommittee or the Speaker of the House to answer questions concerning testimony to committee or to produce at trial official record of the testimony).

purposes." *RNC*, 2022 WL 1294509, at *16; *cf. Eastman v. Thompson*, No. 22-CV-00099, 2022

WL 1407965, at *6 (C.D. Cal. Jan. 25, 2022).  Moreover, this Court has already held that "the

Committee does have a member of the minority party, Representative Liz Cheney, who serves as

Vice Chair, and it appears that the House believes that the Select Committee's composition is

consistent with this requirement as well, and thus that the Subpoena here was validly

issued."  Tr. of Mots. Hr'g at 117:20-25, *United States v. Bannon*, No. 21-670 (D.D.C. June 15,

2022).  This Court's reasoning is supported by the D.C. Circuit and consistent with Judge Kelly's

view that courts must afford substantial deference to the House regarding the meaning and

application of its own rules and procedures.  *See United States v. Rostenkowski*, 59 F.3d 1291,

1306-07 (D.C. Cir.), *op. supplemented on denial of reh'g*, 68 F.3d 489 (D.C. Cir. 1995) (if a

court "interpret[s] the [House's] Rule differently than would the Congress itself . . . , the court

would effectively be making the Rules—a power that the Rulemaking Clause reserves to each

House alone").  Bannon's "ranking minority member" objection has thus properly been rejected

as a matter of law; it is not a question of fact for the jury.

Moreover, contrary to Bannon's representation, Mr. Letter has not "already . . . served as

a fact witness for the Government in the case" nor has he changed his position.  ECF 7, MTQ

Opp. at 2-3.  In the FBI interview to which Bannon refers, Mr. Letter served *as a lawyer*

representing the Select Committee's Chief Counsel and Deputy Staff Director Kristin Amerling.

Ms. Amerling, not Mr. Letter, was the subject of the interview.  *See* Mot. to Dismiss Indictment,

Ex. D ("FBI Interview Report") at 1, *United States v. Bannon*, No. 21-670 (D.D.C. Apr. 15,

2022), ECF 58-4 ("*KRISTIN AMERLING*, Chief Counsel and Deputy Staff Director, U.S. House

of Representatives Select Committee to Investigate the January 6th Attack on the United States

Capitol, *was interviewed* at the Thomas P. O'Neill Jr. Federal Building . . . AMERLING *was*

*accompanied by* U.S. House of Representatives General Counsel DOUG LETTER." (emphasis

added)); *id.* ("*AMERLING* was interviewed by" representatives from the United States

Attorney's Office and the FBI (emphasis added)); *id.* ("After being advised of the identity of the

interviewing AUSAs and Agents and the nature of the interview, *AMERLING* provided the

following information (*AMERLING* was shown various numbered exhibits during the

interview . . . )" (emphasis added)).  Indeed, the header on each page of the document on which

Bannon relies is: "Continuation of FD-302 of (U) November 2, 2021 *Interview of Kristin*

*Amerling*, On 11/02/2021."  *Id.* at 2 (emphasis added).

   The document to which Bannon refers, moreover, is not a transcript of the interview of

Ms. Amerling; it is a report of the interview written by FBI agents who were present at the

interview.  The context of the stray statement Bannon highlights from Ms. Amerling's interview

is also important.  Mr. Letter did not simply "state[] that the Select Committee had no ranking

minority member."  ECF 7, MTQ Opp. at 16.  The context provided in the interview report is as

follows:

> In these House committees, there are particular rules at hearings set aside for the Chair
> and Ranking Member.  The Ranking Member is generally the highest minority member
> in a House committee and typically possess procedural powers.  LETTER explained that
> the Select Committee was specifically appointed by the Speaker of the House and there
> was no majority or ranking members.  Representative LIZ CHENEY is acknowledged to
> be the Vice Chair of the Select Committee; since the Select Committee has a Chair and a
> Vice Chair, there are no express rules for the Vice Chair as there would be for a Ranking
> Member.

ECF 58-4, FBI Interview Report at 4, *Bannon*.

   None of this is inconsistent with the House of Representative's amicus brief, which

explained that "[c]onsistent with House practice and precedent, the term 'ranking minority

member' means the first member of the minority party appointed to the Select Committee by the

Speaker" and "Representative Cheney, by virtue of being the first minority party Member

appointed to the Select Committee, is, by definition, the senior ranking minority member of the Select Committee." ECF 76-2, U.S. House of Representatives's Br. at 9, *Bannon*. The House's amicus brief explained that "there is no formalistic division between majority Members and minority Members, or majority staff and minority staff" on the Select Committee. *Id.* at 10. "Rather, the Select Committee is functioning as a single, unified body with a joint staff. There is thus no Member who uses the formal title 'ranking member,' and matters like the division of time and questioning in depositions are not governed by party affiliation." *Id.*

In any event, whether or not Representative Cheney is assigned the formal title of "ranking minority member" is of no consequence to the elements of Bannon's offense. The Chair's authority to order the taking of depositions does not hinge on whether Representative Cheney's official title is "ranking minority member" or "Vice Chair." It is undisputed that the Chair consulted with Representative Cheney before issuing the subpoena Bannon defied, and the House, in approving the Select Committee's contempt referral, has concluded that House Resolution 503 was satisfied by the Chair's consultation with Representative Cheney. *See* H. Res. 730, 117th Cong. (2021) (approving the Select Committee's referral of Bannon); *RNC*, 2022 WL 1294509, at *16. In light of the deference courts must accord the House regarding the meaning and application of its own rules and procedures, and the presumption of regularity due Congress, that is sufficient. *See Barry v. U.S. ex rel. Cunningham*, 279 U.S. 597, 619 (1929) ("The presumption in favor of regularity . . . cannot be denied to the proceedings of the houses of Congress, when acting upon matters within their constitutional authority.").

### III. The Witnesses from the Select Committee Staff Can Address Any Relevant Information Necessary for Bannon's Defense

Aside from summarily asserting that all sixteen subpoena recipients "possess critical exculpatory evidence that is essential to Mr. Bannon's ability to have a fair trial," ECF 7, MTQ

Opp. at 2, Bannon fails to explain precisely what information each subpoena recipient has and how it is "critical" to Bannon's defense.  Deciphering what constitutes this "critical exculpatory evidence" is particularly difficult here given the sweeping scope of the more than twenty categories of materials Bannon demands in each subpoena.  *See supra* at 3-6.

On page 12 of his opposition brief, Bannon claims that "[t]he Select Committee violated Mr. Bannon's constitutional right to due process in several respects" and lists two topics.  ECF 7, MTQ Opp. at 12.  *First*, he claims that "the Select Committee issued its subpoena without lawful authority" and "[e]ach of the Movants has first-hand knowledge that is exculpatory on this element."  *Id.*  *Second*, he claims that "the Select Committee rejected Mr. Bannon's reasonable request for an accommodation (a one-week extension)" and "each Movant has first-hand knowledge that is exculpatory on this critical trial issue."  *Id.*[12]

With regard to the first due process theory, the question of the Select Committee's authority is legal, not factual.  *See supra* at 14-16.  Even if that were not the case, as the Justice Department has demonstrated, Bannon has waived any argument that the Select Committee's subpoena was invalid due to asserted defects in the Select Committee's authority, composition, or procedures because he failed to raise those arguments to the Select Committee.  *See generally* Mot. in Limine, *United States v. Bannon*, No. 21-670 (D.D.C. Apr. 15, 2022), ECF 53.  Because

---

[12] Elsewhere, Bannon categorizes the testimony he seeks differently, stating his defense requires testimony from Members of Congress on (1) "the decision-making process concerning the composition of the Select Committee, [(2)] the status of any 'ranking minority member,' [(3)] the refusal to engage in the constitutionally mandated accommodation process, [(4)] the rejection of executive privilege, and [(5)] other key defense issues to be put before the jury at trial."  ECF 7, MTQ Opp. at 10.  The first two of these topics—the composition of the Select Committee and "ranking-minority member" issue—appear to go to Bannon's first due process theory challenging the lawful authority of the Select Committee.  The second two topics— accommodation and executive privilege—appear to go to Bannon's second due process theory.

Bannon's challenge to the authority of the Select Committee fails as a matter of law, testimony

on any surrounding facts is not critical to Bannon's defense at trial.

Bannon's second claim likewise fails as a matter of law and, therefore, cannot be critical

to Bannon's defense.  *See generally* ECF 85, Mot. in Limine, *Bannon* (June 17, 2022)

(explaining why the bounds of Bannon's executive privilege assertion presents a legal question,

not a factual question for the jury).  Bannon contends that the Select Committee violated his due

process rights when it denied his request for a one-week extension.  *See* ECF 7, MTQ Opp. at 12.

Bannon, however, has no "legitimate claim of entitlement" to an extension of time to respond to

the Select Committee's subpoena.[13]  And contrary to Bannon's claim, there were not "competing

positions asserted on the executive privilege issue by Presidents Trump and Biden, in light of the

then pending lawsuit, *Trump v. Thompson*."  ECF 7, MTQ Opp. at 2.  *Trump v. Thompson* did

not involve executive privilege claims by a former presidential advisor, *see* 20 F.4th at 16, and

even if Bannon were correct that executive privilege could protect communications of a former

presidential advisor made while he was not a government employee—a dubious argument in

itself—executive privilege does not excuse complete defiance of a Congressional subpoena.

Indeed, the former President's counsel himself made clear that the letter on which Bannon relies

for his privilege assertion "didn't indicate that we believe there is immunity from testimony for

your client.  As I indicated to you the other day, *we don't believe there is*."  ECF 52-3, Mot. in

---

[13] To make out a violation of due process, Bannon must first show the Government deprived him of a "liberty or property interest" to which he had a "legitimate claim of entitlement," and that "the procedures attendant upon that deprivation were constitutionally [in]sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  A "cognizable liberty or property interest," *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012), is essential because "[p]rocess is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement," *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).  Only after a court concludes that a legitimate claim of entitlement exists does the court then evaluate whether the person received whatever process was due.

Limine, Ex. 3, Email from Justin Clark to Robert Costello, *United States v. Bannon*, No. 21-670

(D.D.C. Apr. 15, 2022) (emphasis added); *accord Comm. on Judiciary of U.S. House of*

*Representatives v. McGahn*, 968 F.3d 755, 773 (D.C. Cir. 2020) (ability to invoke executive

privilege to refuse to answer specific questions during Congressional testimony is "unaffected by

an order compelling [the witness] to appear and testify").

      In any event, we made clear that Chief Counsel and Deputy Staff Director Kristin

Amerling and Senior Investigative Counsel Sean Tonolli—both of whom were subpoenaed by

Bannon—will be made available by the Select Committee to testify at trial regarding relevant

topics necessary to evaluate the elements or valid defenses in this case.[14]  To the extent

testimony about the authority of the Select Committee or the circumstances surrounding the

subpoena issued to Bannon are relevant to Bannon's defense, Ms. Amerling and Mr. Tonolli are

competent to testify on those issues.

      Bannon's only response is that "none of the Committee's staffers has any decision-

making authority" and, therefore, "none of the staffers therefore would be competent witnesses

to testify to some of the most fundamental issues Mr. Bannon seeks to raise in his defense."  ECF

7, MTQ Opp. at 10; *id.* ("Only the Members of Congress would be competent witnesses on

issues including the decision-making process concerning the composition of the Select

Committee, the status of any 'ranking minority member,' the refusal to engage in the

---

[14] ECF 1, MTQ at 26 ("Ms. Amerling and Mr. Tonolli will be available to testify to relevant questions from Bannon's counsel.  There should be no questions material to Bannon's defense that the other subpoenaed individuals would uniquely be able to answer."); *Id.* at 17 ("to the extent there is a need at trial for testimony about the subpoena to Bannon, two senior staff members on the Select Committee—Ms. Amerling and Mr. Tonolli—can provide relevant testimony regarding those elements or any available defenses, and the Select Committee will not assert Speech or Debate immunity as to those staff Members for such limited testimony."); *Id.* at 20 ("To the extent this Court concludes Bannon is constitutionally entitled to testimony by House personnel, the availability of Ms. Amerling and Mr. Tonolli will suffice.").

constitutionally mandated accommodation process, the rejection of executive privilege, and other key defense issues to be put before the jury at trial.").  Bannon cites no authority for his assumption that the only witnesses competent to testify on an issue are those who had decision-making authority.  And nowhere does Bannon explain why the authority to make the actual decisions is crucial for the witness testifying, particularly when the witness can testify about the decision process underlying those decisions.  Ms. Amerling and Mr. Tonolli have personal knowledge and—to the extent it is admissible—can testify to these issues.  *See* Fed. R. Evid. 602.

Bannon himself tells this Court that "[e]ach of the Movants has first-hand knowledge that is exculpatory on this element" of his allegation that "the Select Committee issued its subpoena without lawful authority."  ECF 7, MTQ Opp. at 12.  Even assuming that Bannon was correct that this element (1) is factual not legal—it is not—and (2) it could be exculpatory—it cannot— Ms. Amerling and Mr. Tonolli (who were both subpoenaed by Bannon and are both Movants on this Motion), by Bannon's own representation, "have first-hand knowledge" on this issue.

*      *      *

Throughout his opposition brief, Bannon asks for relief specific to his criminal case. ECF 7, MTQ Opp. at 3 ("If the Court grants Movant's Motion To Quash, then the only next step consistent with due process would be to either exclude all congressional evidence at Mr. Bannon's trial or dismiss the charges entirely to preserve Mr. Bannon's Fifth and Sixth Amendment Rights."); *id.* at 11 ("[S]hould this Court grant the Motion to Quash in whole or in part, we ask the Court to exclude all congressional evidence at his criminal trial."); *id.* at 13 ("[I]f this Court concludes that the Speech or Debate Clause immunizes Movants from complying with the subpoenas, dismissal is the only appropriate remedy to safeguard Mr. Bannon's Fifth and

Sixth Amendment rights."). In fact, Bannon dedicates an entire section of his opposition to arguing that "granting the motion to quash will require the exclusion of all Congressional evidence at Mr. Bannon's criminal trial." *Id.* at 19-21.

Bannon's counsel has since clarified that his opposition to this motion to quash does not in fact seek relief in the criminal case, and that should he seek any relief that pertains to the subpoenaed witnesses, he would seek such relief on the docket of the criminal case. To the extent this Court contemplates the relief Bannon describes in four separate places in his brief, that is properly considered not in the present miscellaneous proceeding, but in Bannon's criminal proceeding so that the Department of Justice has an opportunity to respond.

## **CONCLUSION**

For the reasons stated above, the motion to quash should be granted.

Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER
    *General Counsel*
TODD B. TATELMAN
    *Principal Deputy General Counsel*
ERIC R. COLUMBUS
    *Special Litigation Counsel*
MICHELLE S. KALLEN
    *Special Litigation Counsel*
STACIE M. FAHSEL
    *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

July 5, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2022, I caused the foregoing document to be filed via the

CM/ECF system for the U.S. District Court for the District of Columbia, which I understand

caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter
